Case 1:26-cv-03467-KPF    Document 1-3    Filed 04/27/26    Page 1 of 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

METROPOLITAN PARTNERS GROUP
ADMINISTRATION, LLC

                                    Plaintiff,

        -against-

OLIPHANT USA, LLC; GROWTH PLATFORMS,
LLC; FERRUM CAPITAL, LLC

                                    Defendants.

Index No. _____

**COMPLAINT**

Plaintiff Metropolitan Partners Group Administration, LLC ("**Plaintiff**" or "**Metropolitan**"), by its attorneys, Holland & Knight LLP, as and for its complaint against Defendants Oliphant USA, LLC ("**Oliphant**"); Ferrum Capital, LLC ("**Ferrum**"); Growth Platforms, LLC ("**Growth**" and, collectively with Oliphant and Ferrum, "**Defendants**"), states as follows:

1.      This action for breach of contract arises from Defendants' violations of two separate Lender Acknowledgement Agreements (the "**Acknowledgement Agreements**") designed to protect proceeds related to Metropolitan's collateral.

2.      Metropolitan is the administrative agent under a Credit Agreement dated October 13, 2021 (the "**2021 Met Loan Agreement**") entered into by Oliphant, Collins Asset Group, LLC ("**Collins**") and certain of their affiliates (collectively, the "**Oliphant/Collins Obligors**"). Pursuant to this agreement, the lenders agreed to and did, in fact, make loans to the Oliphant/Collins Obligors. In connection with the 2021 Met Loan Agreement and these loans, Metropolitan obtained a first priority security interest in all assets owned by the Oliphant/Collins Obligors (the "**Met 1st Lien Collateral**") other than those asset portfolios and rights to payments that were previously pledged by Collins to Ferrum and Growth (as specified in the 2021 Met Loan

1

Agreement) (the "**Ferrum/Growth Collateral**"). Oliphant was the servicer of all of the asset portfolios constituting the Met 1st Lien Collateral and the Ferrum/Growth Collateral.

3. To prevent disputes over funds that were commingled by Oliphant as servicer and to protect the distinct interests of the beneficiaries of the Met 1st Lien Collateral and the Ferrum/Growth Collateral, Metropolitan entered into the Acknowledgement Agreements with Defendants. These agreements required that each party acknowledge the security interests in the respective pools of collateral and agree to specific protocols for identifying and transferring remittances to the proper party.

4. This was a mutually beneficial arrangement between the parties to ensure that each lender received their proper share of remittances. Thus, as part of the Acknowledgement Agreements, the parties each had not only an obligation, but also an incentive, to monitor the remittances they received.

5. In breach of its contractual obligations, Oliphant wrongfully provided funds and assets that constituted Met 1st Lien Collateral to Defendants Ferrum and Growth. Under their respective Acknowledgement Agreement, Defendants Ferrum and Growth had an obligation to return funds that constituted Met 1st Lien Collateral to Metropolitan, but Defendants Ferrum and Growth did not do so. Such conduct caused Metropolitan substantial damages. Metropolitan brings this action to recover funds from Defendants that should have been paid over to Metropolitan, but were instead paid by Oliphant to Ferrum and Growth and wrongfully retained by them.

6. In addition, Metropolitan serves as the administrative agent under a separate Credit Agreement dated June 30, 2023 (the "**2023 Met Loan Agreement**"). Through this agreement and separate security documents, Metropolitan holds, for the benefit of the lenders party thereto, a perfected, second-priority security interest in substantially all assets of Oliphant and its affiliates

2

(other than Collins), which includes the assets that constitute the Met 1st Lien Collateral (the "**Met 2nd Lien Collateral**", and together with the Met 1st Lien Collateral, the "**Met Collateral**"). Defendants' acceptance and retention of remittances to which they were not entitled impaired the Met 2nd Lien Collateral and caused injury to Metropolitan.

### Parties

7.    Plaintiff Metropolitan is a Delaware limited liability company with its principal place of business located at 850 Third Ave, 18th Floor, New York, New York 10022.

8.    Defendant Oliphant is a Delaware limited liability company. Oliphant's sole member is AUSSRQ Holdings, LLC, a Florida limited liability company. AUSSRQ Holdings, LLC's sole member is Oliphant United, Inc., a Florida corporation with its principal place of business in Texas. Oliphant can be served through its registered agent: URS Agents, LLC, 3458 Lakeshore Dr., Tallahassee, Florida, or wherever it may be found.

9.    Defendant Ferrum Capital, LLC is a Texas limited liability company. Ferrum Capital, LLC can be served through its registered agent: Joshua L. Allen, 4415 66th Street #101, Lubbock, Texas 79414, or wherever it may be found.

10.    Defendant Growth Platforms, LLC is a Wisconsin limited liability company. Growth Platforms, LLC can be served through its registered agent: LegalCorp Solutions, LLC, N92W17420 Appleton Ave., Ste 103E, Menomonee Falls, WI 53051, or wherever it may be found.

### Jurisdiction and Venue

11.    This Court has personal jurisdiction over each party because they have contractually consented to jurisdiction in this Court in the Acknowledgement Agreements. Further, the parties conduct substantial business in New York. Finally, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York.

3

Case 1:26-cv-03467-KPF    Document 1-3    Filed 04/27/26    Page 4 of 16

12.     Venue is proper in this Court because the Acknowledgement Agreements provide for venue in New York state courts.

## Facts

13.     Collins was established to acquire, manage, and service pools of consumer charge-off debt. Consumer charge-off debts generally consist of consumer financing instruments, such as loans and credit cards, where the borrower is in default. When a lender "charges-off" the debt on its books, the consumer debt can be bundled into pools of outstanding consumer loan obligations that are sold to third parties who then attempt to collect on the obligations.

14.     Oliphant Financial LLC ("**Oliphant Financial**") was established separately from Collins also to acquire, manage, and service pools of consumer charge-off debt. Oliphant Financial and Collins combined in or around 2017 to capitalize on perceived synergies and complementary businesses. Post-combination, Oliphant Financial and Collins established Defendant Oliphant to service the pools of consumer charge-off debt that they owned.

15.     As early as 2017, Collins borrowed funds from various lenders, which Collins used to acquire additional pools of consumer debt. Two such lenders were Ferrum and Growth. On or about October 17, 2017, Collins entered into separate credit and security agreements with Ferrum and Growth (the "**Ferrum Loan Agreement**" and "**Growth Loan Agreement**," respectively). Pursuant to these agreements, Collins granted Ferrum and Growth security interests in certain of its assets to secure the credit extended, defined as the "**Ferrum Facility Collateral**" and "**Growth Facility Collateral**."

16.     Metropolitan first financed various pools of consumer debt originated by various Oliphant-affiliated entities in 2019. Oliphant performed servicing activities for all such pools as well as the ones financed by Ferrum and Growth, and commingled proceeds from all of those

4

pools. As a result, when Metropolitan first provided financing to Oliphant-affiliated entities, Metropolitan required that Oliphant, Collins, Ferrum and Growth each enter into acknowledgement agreements substantially similar to the Acknowledgement Agreements.

17.  On October 13, 2021, Metropolitan, as administrative agent for the lenders and the Oliphant/Collins Obligors entered into the 2021 Met Loan Agreement. As discussed further below, Metropolitan is also the administrative agent under a separate credit facility agreement entered into in 2023.

18.  Pursuant to the 2021 Met Loan Agreement, the lenders party thereto agreed to make multi-draw term loans available to the Oliphant/Collins Obligors.

19.  To secure the obligations under the 2021 Met Loan Agreement, the Oliphant/Collins Obligors granted Metropolitan a security interest in the Met 1st Lien Collateral.

20.  A central figure in these transactions is Defendant Oliphant, which was designated as the servicer under all three distinct credit facilities—the 2021 Met Loan Agreement, the Ferrum Loan Agreement, and the Growth Loan Agreement. Pursuant to these credit agreements and related agreements, Oliphant was required to make certain remittances.

21.  Because Oliphant was the servicer of each facility, however, certain remittances received by Oliphant, regardless of whether they were collateral for loans extended by Ferrum, Growth or Metropolitan, were deposited into a single, commingled deposit account owned by Oliphant at Hancock Whitney Bank, account number ending in 2256 (the "**Commingled Remittance Account**").

22.  To resolve the inherent conflict and risk of misapplication of funds from this commingled structure, the parties entered into the two substantially identical Acknowledgement Agreements. On October 15, 2021, Metropolitan, Oliphant, Collins, and Growth executed a Lender

5

Acknowledgement Agreement (the "**Growth Agreement**"). Three days later, on October 18, 2021, Metropolitan, Oliphant, Collins, and Ferrum executed a Lender Acknowledgement Agreement (the "**Ferrum Agreement**"). Each of these agreements provides that the parties shall only retain remittances to which they are entitled and transfer remittances to which they are not entitled.

23. Pursuant to the Acknowledgement Agreements, Oliphant was responsible for ensuring that remittances associated with the Met Collateral were transferred in accordance with the 2021 Met Loan Agreement and that remittances associated with the Ferrum/Growth Collateral were transferred in accordance with their respective loan agreements.

24. These Acknowledgement Agreements accomplished certain goals. Namely, they: (1) recognized each lender party's rights in their separate collateral (2) protected the proceeds of the Met Collateral, (3) recognized that Oliphant, as servicer, was commingling Met Collateral proceeds with the proceeds of Ferrum/Growth Collateral, and (4) provided that Metropolitan, Ferrum, and Growth would turn over any amounts that they received that they could identify "using reasonable efforts" as being the proceeds of the other party's collateral.

25. The execution of these agreements was a post-closing requirement of the 2021 Met Loan Agreement and failure to comply with it would have resulted in an event of default thereunder. This process established by the Acknowledgement Agreements was not new. Indeed, Metropolitan previously entered into similar agreements with Oliphant, Ferrum, and Growth, as lenders to Collins, two years earlier in October 2019 in respect to a different credit facility for which Metropolitan acted as administrative agent.

26. The express purpose of the Acknowledgement Agreements was to establish a contractual framework to protect each lender's rights in distinct collateral. Under Section 1(a) of

the Acknowledgement Agreements, each party formally acknowledged the other applicable party's security interest in their respective collateral, including all related remittances. Critically, in Section 1(b) of the Acknowledgement Agreements, Ferrum and Growth each irrevocably disclaimed "any right, title or interest in or to any Met Facility Collateral or any Asset Portfolios which are not Ferrum [or Growth] Facility Collateral, in each case including Remittances relating thereto."

27.     To enforce this separation, the Acknowledgement Agreements imposed a clear, non-discretionary duty upon Oliphant: that Oliphant "agrees promptly to transfer any funds deposited from time to time in the … Commingled Remittance Account and that are identified to Servicer in writing (or are identifiable by Servicer using reasonable efforts) as … Met Facility Remittances, in accordance with the [2021] Met Loan Agreement." Acknowledgement Agmts., Section 2(b).

28.     To facilitate this process, Metropolitan, Growth, and Ferrum each appointed Oliphant as their limited agent for the remittances. The Acknowledgement Agreements explicitly defined the scope of this role, stating that Oliphant's "sole duty as such agent shall be to hold such Remittances for the benefit of the party entitled to such Remittances and to transfer such Remittances as aforesaid." Acknowledgement Agmts., Section 2(a).

29.     Upon information and belief, Oliphant, as servicer, had access to the necessary data and systems to perform its duties under the Acknowledgement Agreements and the Servicing Agreement entered into in connection with (and defined in) the 2021 Met Loan Agreement. This includes transaction records, portfolio data from its eCollections software, and business intelligence reports. Oliphant was therefore capable of identifying remittances related to Met

Collateral ("**Met Facility Remittances**") using "reasonable efforts," as required by the Acknowledgement Agreements.

30.    Nonetheless, Metropolitan recently learned that the cash flows from the Met Collateral were severely mismanaged, and profound discrepancies exist between the amounts allocable to the Met Collateral and the manner in which such amounts were contractually required to be distributed.

31.    For instance, Metropolitan has discovered that between January 1, 2022, and April 30, 2025, Oliphant made significant overpayments to certain lenders pursuant to credit agreements. Upon information and belief, many of Oliphant's wrongful payments were directed to Defendants Ferrum and Growth. Instead of holding and transferring certain Met Facility Remittances as required by the 2021 Met Loan Agreement, Oliphant transferred certain Met Facility Remittances to Ferrum and Growth, which accepted and retained funds to which they had no contractual right and, in breach of their contractual obligations under their respective Acknowledgement Agreements (as explained below), failed to pay to Metropolitan.

32.    The Acknowledgement Agreements also created a reciprocal obligation for the lenders themselves. Should Ferrum or Growth receive "funds or other property … that are identified … in writing or are identifiable by Ferrum Lender (using reasonable efforts)" as Met Facility Remittances, they were contractually obligated to promptly transfer such funds to Metropolitan. Acknowledgement Agmts., Section 2(b). Metropolitan agreed to identical provisions in respect of its receipt of remittances in respect of the Ferrum/Growth Collateral that was also being serviced by Oliphant. This contractual framework was intended to create a fail-safe system to ensure that each lender retained only the proceeds of its collateral.

8

Case 1:26-cv-03467-KPF    Document 1-3    Filed 04/27/26    Page 9 of 16

33.    Further evidencing the parties' intent to respect their distinct interests in the Metropolitan Collateral and Ferrum/Growth Collateral, Section 2(d) of the Acknowledgement Agreements requires that, in the event funds are commingled, each signatory "shall, in good faith, cooperate with each other to identify such [Ferrum/Growth] Collateral and Met Facility Collateral respectively." *Id.* This is in addition to the obligation to "cooperate in good faith" to ensure each party's interest in its collateral "shall be protected and preserved…." *Id.*

34.    The Acknowledgement Agreements further provide that "[Growth/Ferrum] Lender shall not have or assert, and hereby disclaims, any right, title or interest in or to any Met Facility Collateral, in each case including Remittances"; further, "[Growth/Ferrum] Lender hereby agrees promptly to transfer to or in accordance with the written direction of, the party hereto entitled to such Remittances, any funds or other property that are received by [Growth/Ferrum] Lender…." Acknowledgement Agmts., Sections 1(b), 2(b). Despite these obligations, Growth and Ferrum failed to transfer remittances to which they had no contractual right that, if they had performed their respective obligations to use "reasonable efforts" as required by Section 2(b) of each Acknowledgement Agreement, they would have identified as being Met Facility Remittances that should have been promptly transferred to Metropolitan.

35.    Growth and Ferrum have every incentive to monitor and track incoming remittances. The specific credit facilities referenced in the Acknowledgement Agreements are not simple. They require tracking and monitoring as the quantum of contractual payment obligations to the applicable lenders is dependent on the performance of the underlying asset portfolio that is financed by, and is collateral for, said credit facility. Oliphant, as servicer, provided detailed servicing reports in connection with the transferring of remittances and performance of the underlying asset portfolios.

9

36.     As sophisticated lenders under the Ferrum Loan Agreement and the Growth Loan Agreement, both Ferrum and Growth would have regularly monitored the performance of their loans (and related underlying asset portfolios) and tracked incoming remittances from Oliphant to ensure compliance with the borrowers' obligations. It is not reasonably conceivable that Ferrum and Growth would have failed to realize they were receiving from Oliphant approximately $10,000,000 or more in excess of the income the Ferrum/Growth Collateral was actually producing.

37.     If the process prescribed by the Acknowledgement Agreements was followed by the parties, Ferrum and Growth would have only retained those remittances to which they were entitled. Indeed, the Acknowledgement Agreements establish that Growth and Ferrum are both Metropolitan's agents and required to "hold [] Met Facility Remittances for the benefit of [Metropolitan]." Acknowledgement Agmts., Section 2(b). Put another way, Ferrum and Growth were required to separate those remittances that belonged to Metropolitan.

38.     In sum, under Sections 2(b) of their respective Acknowledgement Agreements, Defendants Ferrum and Growth had express, mandatory obligations to: (1) use reasonable efforts to identify any Met Facility Remittances they received; (2) hold such Met Facility Remittances as agent for the benefit of Metropolitan; and (3) promptly transfer such funds to Metropolitan. Despite the clear contractual mandate of the Acknowledgement Agreements, the procedures designed to protect Metropolitan's collateral failed because Defendants did not adhere to the agreed-upon process for segregating and transferring funds, resulting in the systematic misapplication of Met Facility Remittances.

39.     In addition to the 2021 Met Loan Agreement, Metropolitan also acts as administrative and collateral agent under the 2023 Met Loan Agreement, which extended credit to

10

Oliphant Credit, LLC and Legalis Capital, LLC (affiliates of Defendant Oliphant), as borrowers. Defendant Oliphant and its affiliates (other than Collins) are guarantors under this agreement.

40.    The relative priorities of liens among Metropolitan's 2021 and 2023 facilities are governed by a Split Lien Intercreditor Agreement dated June 30, 2023, which, among other things, allocates priorities in collateral and proceeds and provides for payments-over and proceeds-sharing mechanics. Metropolitan's security interests have been perfected.

41.    As a result, to the extent Growth or Ferrum accepted or retained remittances constituting or traceable to proceeds in which Metropolitan holds a perfected security interest, such conduct injured Metropolitan by diminishing collateral and diverting proceeds securing the obligations under the 2023 Met Loan Agreement, and Defendants are not entitled to retain such funds.

42.    As a direct and proximate result of Defendants' breaches of contract and other wrongful conduct, Metropolitan has sustained significant financial damages. These damages are subject to ongoing analysis and discovery but are pled with the specificity available at this time.

43.    Metropolitan's actual damages are no less than $10,000,000 and include, wrongful payments Oliphant made to Ferrum and Growth that Ferrum and Growth improperly retained.

44.    Plaintiff reserves all rights and remedies, legal and equitable, with respect to injuries to Metropolitan in its capacity as administrative and collateral agent under the 2023 Met Loan Agreement, including the right to seek tracing, turnover, and other equitable relief after discovery further clarifies the scope of Defendants' receipt and disposition of remittances and proceeds of Met Collateral.

11

45.     In addition to these direct losses, Metropolitan is entitled to recover consequential damages arising from Defendants' breaches, including lost investment income and other business damages resulting from the inability to use and reinvest the proceeds of its rightful collateral.

46.     The full extent of Metropolitan's damages will be ascertained through discovery, including a full accounting from Defendants. The figures stated herein are based on the best available information and are subject to adjustment. Metropolitan also seeks recovery of pre-judgment and post-judgment interest at the maximum rate permitted by law.

47.     Pursuant to the 2021 Met Loan Agreement and 2023 Met Loan Agreement, Metropolitan is also entitled to recover all costs and expenses, including the reasonable fees, charges, and disbursements of counsel, incurred in connection with the enforcement of its rights.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (against Ferrum and Oliphant)

48.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 47 above as if fully set forth herein.

49.     Metropolitan, Oliphant, and Ferrum are parties to the Ferrum Agreement. The Ferrum Agreement is a valid and enforceable contract.

50.     Metropolitan has performed all of its obligations under the Ferrum Agreement and all conditions precedent to Oliphant's and Ferrum's required performance under the Ferrum Agreement have been performed, will be performed, or have been waived.

51.     Oliphant materially breached the Ferrum Agreement by, among other things, failing to segregate funds that rightfully belong to Metropolitan and paying such funds to Ferrum.

52.     Ferrum materially breached the Ferrum Agreement by, among other things, accepting, retaining, and failing to repay to Metropolitan funds which rightfully belong to

12

Case 1:26-cv-03467-KPF    Document 1-3    Filed 04/27/26    Page 13 of 16

Metropolitan. Ferrum further breached the Ferrum Agreement by failing to honor its obligations to act as Metropolitan's agent with respect to any such funds.

53.     Metropolitan has incurred damages because of Oliphant's and Ferrum's material breaches of the Ferrum Agreement. Metropolitan has further been injured in its capacity as administrative agent under the 2023 Met Loan Agreement because Defendants' conduct diverted proceeds and impaired collateral in which Metropolitan holds a perfected, second-priority lien.

54.     In addition to its direct losses of not less than $10,000,000, Metropolitan is entitled to recover consequential damages arising from Defendants' breaches, including lost investment income and other business damages resulting from the inability to use and reinvest the proceeds of its rightful collateral.

55.     Metropolitan as agent under the 2021 Met Loan Agreement and 2023 Met Loan Agreement therefore seeks all remedies to which it may be entitled, including (but not limited to) actual damages.

### SECOND CAUSE OF ACTION
### Breach of Contract
### (against Growth and Oliphant)

56.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 55 above as if fully set forth herein.

57.     Metropolitan, Oliphant, and Growth are parties to the Growth Agreement. The Growth Agreement is a valid and enforceable contract.

58.     Metropolitan has performed all of its obligations under the Growth Agreement and all conditions precedent to Oliphant's and Growth's required performance under the Growth Agreement have been performed, will be performed, or have been waived.

59.     Oliphant materially breached the Growth Agreement by, among other things, failing to segregate funds that rightfully belong to Metropolitan and paying such funds to Growth.

13

60.    Growth materially breached the Growth Agreement by, among other things, accepting, retaining, and failing to repay to Metropolitan funds which rightfully belong to Metropolitan. Growth further breached the Growth Agreement by failing to honor its obligations to act as Metropolitan's agent with respect to any such funds.

61.    In addition to its direct losses of not less than $10,000,000, Metropolitan is entitled to recover consequential damages arising from Defendants' breaches, including lost investment income and other business damages resulting from the inability to use and reinvest the proceeds of its rightful collateral.

62.    Metropolitan has incurred damages because of Oliphant's and Growth's material breaches of the Growth Agreement. Metropolitan has further been injured in its capacity as administrative agent under the 2023 Met Loan Agreement because Defendants' conduct diverted proceeds and impaired collateral in which Metropolitan holds a perfected, second-priority lien.

63.    Metropolitan as agent under the 2021 Met Loan Agreement and 2023 Met Loan Agreement therefore seeks all remedies to which it may be entitled, including (but not limited to) actual damages.

### THIRD CAUSE OF ACTION (in the alternative)
### Unjust Enrichment
### (against Ferrum and Growth)

64.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 63 above as if fully set forth herein.

65.    Metropolitan pleads this cause of action in the alternative to its claims for breach of contract as against Ferrum and Growth.

66.    By accepting and failing to return certain funds that rightfully belong to Metropolitan on behalf of the lenders under the 2021 Met Loan Agreement, Ferrum and Growth have been enriched.

14

Case 1:26-cv-03467-KPF    Document 1-3    Filed 04/27/26    Page 15 of 16

67. Further, Defendants' acceptance and retention of remittances to which they were not entitled unjustly harmed Metropolitan in its capacity as administrative agent under the 2023 Met Loan Agreement by diverting proceeds and impairing collateral in which Metropolitan holds a perfected, second-priority security interest.

68. Ferrum's and Growth's enrichment came at the expense of Metropolitan.

69. It is against equity and good conscience for Ferrum and Growth to retain such funds.

**WHEREFORE**, Plaintiff prays that the Court enter judgment in its favor and against Defendants Oliphant, Ferrum, and Growth jointly and severally, as follows:

a. Awarding compensatory damages in an amount to be determined at trial, but in no event less than $10,000,000;

b. Ordering Defendants to provide a full and complete judicial accounting of all funds received in respect of the Collins asset portfolios and all disbursements made therefrom;

c. Imposing a constructive trust and/or equitable lien upon all Met Facility Remittances and traceable proceeds thereof that are held by or for the benefit of any Defendant;

d. Ordering Defendants to provide a complete tracing and turnover, in favor of Metropolitan in its capacity as agent under the 2023 Met Loan Agreement, of all remittances and proceeds received or retained in derogation of Metropolitan's perfected, second-priority lien, including all identifiable and traceable proceeds.

e. Issuing a preliminary and permanent injunction preventing any Defendant from transferring, dissipating, or otherwise disposing of any funds subject to the constructive trust or equitable lien;

f. Awarding Metropolitan its reasonable attorneys' fees, costs, and expenses incurred in this action, as provided by contract;

g. Awarding prejudgment and post-judgment interest at the highest rate permitted by law; and

h. Granting such other and further relief as this Court deems just, equitable, and proper.

15

Dated:       New York, New York
             February 6, 2026

HOLLAND & KNIGHT LLP

By: */s/ Sean C. Sheely*
    Sean C. Sheely
    787 Seventh Avenue, 31st Floor
    New York, New York 10019
    Phone: (212) 513-3200
    sean.sheely@hklaw.com

*Attorneys for Metropolitan Partners Group Administration, LLC*

16