UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————X

METROPOLITAN PARTNERS GROUP
ADMINISTRATION, LLC,

Plaintiff,

v.

OLIPHANT USA, LLC, GROWTH
PLATFORMS, LLC, and FERRUM
CAPITAL, LLC,

Defendants.

————————————————————X

Case No. 1:26-cv-03467

Removed from the Supreme Court
of the State of New York for the
County of New York,
Case No. 650772/2026

## DEFENDANT FERRUM CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 1

METROPOLITAN'S CLAIMS ............................................................................................... 5

ARGUMENT ........................................................................................................................... 6

    1.   Bankruptcy Jurisdiction ........................................................................................ 6

    2.   Core Proceeding Status ......................................................................................... 7

    3.   Transfer Under 28 U.S.C. §§ 1412 and 1404...................................................... 10

    4.   Judicial Economy and Interests of Justice ...........................................................11

    5.   Locus of Operative Events................................................................................... 12

    6.   Location of Witnesses and Documents and Convenience of Parties ............................. 13

    7.   Metropolitan's Choice of Forum.......................................................................... 14

    8.   Other Neutral Factors.......................................................................................... 15

    9.   Conclusion on Transfer Factors .......................................................................... 16

CONCLUSION AND REQUEST FOR RELIEF ....................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of America, N.A. v. Wilmington Trust FSB,*
943 F. Supp. 2d 417 (S.D.N.Y.2015)...........................................................................10, 11, 15

*Barton v. Barbour,*
104 U.S. 126 (1881)........................................................................................................1, 13

*Blanton v. IMN Fin. Corp.,*
260 B.R. 257 (M.D.N.C. 2001)...........................................................................................12

*Brown v. Chestnut (In re Chestnut),*
422 F.3d 298  (5th Cir. 2005) ...............................................................................................9

*Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC,*
2020 WL 7042642 (E.D.N.Y. November 30, 2020)............................................................14

*Delaware Trust Co. v. Wilmington Trust, N.A.,*
534 B.R. 500 (S.D.N.Y. 2015)......................................................................................11, 15

*Endeavour GP LLC v. Endeavor Highrise LP (In re Endeavor Highrise LP),*
432 B.R. 583 (Bankr. S. D. Tex. 2010) ................................................................................9

*Hohl v. Bastian,*
279 B.R. 165 (W.D. Pa. 2002).............................................................................................12

*Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, LP,*
487 B.R. 158 (S.D.N.Y. 2013)..................................................................................7, 10, 11

*Lothian Cassidy LLC v. Ransom,*
428 B.R. 555 (E.D.N.Y. 2010) .............................................................................8, 11, 14, 15

*Schreiber v. Friedman,*
2025 WL 1616659 (E.D.N.Y. June 8, 2025) .......................................................................10

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.,*
884 F.2d 688 (2d Cir. 1989).................................................................................................9

*United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n (In
re United States Lines, Inc.),*
197 F.3d 631 (2d Cir. 1999)................................................................................................8

*In re Worldcom, Inc.,*
293 B.R. 308 (S.D.N.Y. 2003)..............................................................................................6

iii

*Winstar Holdings, LLC v. Blackstone Group LP,*
  2007 WL 4323003 (S.D.N.Y. 2007)......................................................................8

**Statutes**

28 U.S.C. § 157(b)(2) ..............................................................................7, 8, 9

28 U.S.C. § 1334.........................................................................................6, 7

28 U.S.C. § 1404......................................................................................1, 10, 15

28 U.S.C. § 1412..........................................................................................1, 10

28 U.S.C. § 1452.............................................................................................6

**INTRODUCTION**

Defendant Ferrum Capital, LLC acting through its court-appointed Receiver, John Patrick Lowe (below, "Ferrum" and the "Receiver") files this Memorandum in support of its Motion to Transfer Venue subject to and without waiving its Motion to Dismiss under the authority of *Barton v. Barbour*, 104 U.S. 126 (1881), called the Barton Doctrine, which has been filed immediately prior to this motion (ECF No. 4).

The motion to dismiss to pursuant to the Barton Doctrine is based on the fact that the property being sued for by Plaintiff Metropolitan Partners Group Administration, LLC ("Metropolitan") is property under the supervision of the 131st Judicial District Court in Bexar County, Texas, and the action must be brought before that Court. If dismissal is granted, Metropolitan can bring its action in the Western District of Texas. If this Court transfers venue, Metropolitan can bring its action in the Western District of Texas. These papers address the transfer.

**FACTUAL BACKGROUND**

This action is a core proceeding in the Chapter 7 bankruptcy case of Collins Asset Group, LLC ("CAG") pending in the United States Bankruptcy Court for the Western District of Texas. Ferrum asks the Court under 28 U.S.C. §§ 1412 and 1404 to transfer this action to the United States District Court for the Western District of Texas where the CAG bankruptcy case and closely related *Musgrove Adversary* proceeding are pending.

CAG is a debtor in a Chapter 7 bankruptcy case pending in the United States District Court for the Western District of Texas in case no. 25-51660-mmp, *In re Collins Asset Group, LLC*. CAG purchased and serviced pools or packages of charged-off consumer debt accounts. Metropolitan

Complaint, ECF No. 1-3 ("Compl.") ¶ 13.[1]  Defendant Oliphant USA serviced the accounts for CAG.  *Id.* ¶ 14.

Defendants Ferrum and Growth Platform, LLC ("Growth") loaned  money to CAG to fund CAG's purchase of accounts.  *Id.* ¶ 15.  CAG granted Ferrum a security interest in accounts CAG purchased and in the proceeds of the accounts.  *Id.*; Moscow Decl. Ex. 1, Receiver Declaration, ¶ 4.  CAG apparently had a similar relationship with Growth in which Growth loaned money to CAG and received a security interest in accounts CAG purchased.  Compl. ¶¶ 2, 15.

Metropolitan also loaned money to CAG and to its affiliates, the Oliphant companies.  *Id.* ¶ 16.

Each time Ferrum loaned money to CAG, CAG executed a promissory note and security agreement to Ferrum.  There are 62 CAG-to-Ferrum promissory notes with an unpaid principal balance due Ferrum of approximately $47 million.  Receiver Decl., Ex. 1, ¶ 9.

Ferrum was a Ponzi scheme.  Ferrum took in about $67 million from retail investors and issued bogus promissory notes to them in return.  Receiver Decl., Ex. 1, ¶ 9; Receiver's Second Amended Complaint, Ex. 2, ¶ 99-112.  Insiders at Ferrum siphoned off millions of dollars of the investor money for themselves and loaned about $47 million to CAG.  *Id.* ¶ 105.

Insiders and affiliates of CAG and its affiliates Defendant Oliphant USA, LLC, Oliphant Financial, LLC, Oliphant, Inc., and Accelerated Inventory Management, LLC ("AIM") looted CAG of its cash.  *Id*.  The insiders at Oliphant also used cash Ferrum advanced to CAG or collections on or proceeds of CAG accounts in which Ferrum had a security interest to purchase additional accounts in the name of an Oliphant affiliated AIM.  *Id.* ¶¶ 78-81 & 130-141.

---

[1] Ferrum uses this Court's file document numbers to refer to items filed in the Court's records in this case.  References below to Exhibits are to the Exhibits filed with this Motion.

Metropolitan alleges that the Oliphant companies borrowed money from Metropolitan to purchase accounts and pledged the accounts as collateral to Metropolitan. Metropolitan Complaint, ECF No.1-3, ¶ 16.  Ferrum through the Receiver and the Chapter 7 Trustee in the CAG bankruptcy, identify AIM as one of the Oliphant affiliates who borrowed from Metropolitan and pledged accounts as collateral.  Receiver Second Amended Complaint, Ex. 2, ¶¶ 79-81, 125-127, 130-140.

With the cash looted from CAG and transferred to its Oliphant affiliates, CAG was unable to pay Ferrum.  CAG defaulted on its promissory notes to Ferrum, Ferrum stopped paying the retail investors on the Ferrum-to-retail-investor level promissory notes, and the Ponzi scheme collapsed. *Id.* at 111 & 17 - 22.

Judy Musgrove and a number of other retail investors in Ferrum promissory notes sued CAG, its insiders, and Oliphant for fraud and violations of the Texas Securities Act.  A state court in Bexar County, Texas[2] then appointed John Patrick Lowe to serve as the Receiver over the affairs of Ferrum.  Receiver Decl., Ex. 1, ¶ 2; Texas state court order appointing Receiver, Ex. 3.  The Receiver sued CAG and its Oliphant affiliates in the Texas state court.

On June 4, 2025, when the Receiver asked the Texas state court to set a hearing on the Receiver's Motion to Enforce Receivership Order and Show Cause, CAG filed its Chapter 7 bankruptcy.[3]

The Oliphant affiliates of CAG removed the state court litigation to the United States Bankruptcy Court for the Western District of Texas in *Judy Musgrove et al. v. Brooklynn Chandler Willy et al.*, adversary proceeding no. 25-05047-mmp (the *"Musgrove Adversary"*).[4] CAG

---

[2] San Antonio, Texas is in Bexar County.  Both are in the Western District of Texas.
[3] The Receiver's Motion to Enforce Receivership Order against CAG and Oliphant filed in the Texas state court is Exhibit 4 to this Motion.  CAG initially filed its bankruptcy in Delaware.  On July 25, 2025, the Bankruptcy Court there transferred the CAG Chapter 7 case to the Western District of Texas. Order Granting Motion to Transfer Venue, Ex. 14.
[4] Some of the claims by the Receiver and the Musgrove plaintiffs were remanded to the state court. The Musgrove action pending in state district court in Bexar County, Texas—the 131st Judicial District Court—is the court

scheduled Ferrum and Growth (along with three others) as secured creditors. CAG Amended Bankruptcy Schedules, Ex. 5 at 13-15 of 30. The Receiver's proof of claim for Ferrum is the largest claim—both secured and unsecured.[5] Defendant Oliphant also is scheduled as a creditor in the bankruptcy. CAG Amended Schedules, Ex. 5 at 18 of 30. And as shown in more detail below, Metropolitan has asserted a claim in the CAG bankruptcy.

The Oliphant affiliates of CAG had been conducting the business of CAG since at least some time in 2022. The owners of the Oliphant affiliates acquired CAG in 2021. From that point forward CAG and the Oliphant affiliates had common control and ownership. From at least some time in 2022, there were no employees of CAG. Employees of Oliphant conducted the servicing of CAG's portfolio of accounts and performed the bookkeeping function for CAG. CAG Representative Testimony, Ex. 8 at 13-14.

The Ferrum Receiver and the CAG Chapter 7 Trustee claim in the *Musgrove Adversary* that CAG transferred to AIM cash Ferrum loaned to CAG or proceeds of or collections on CAG accounts CAG pledged as collateral to Ferrum. The Receiver asserted a claim against Metropolitan in the Receiver's Second Amended Complaint in the Musgrove Adversary to recover what the Receiver alleges are traceable proceeds of Ferrum collateral accounts that Metropolitan received from the accounts purchased in the name of AIM using Ferrum proceeds. Receiver's Second Amended Complaint, Ex. 2, ¶ 78 – 81 & 130 - 141.[6] The CAG Chapter 7 Trustee then moved in the *Musgrove Adversary* to substitute in for the Receiver on that claim as the proper party. The

---

administering the receivership over Ferrum in civil action no. 2023CI22575, *Judy Musgrove et al. v. Brooklynn Chandler Willy et al.* Ferrum through its Receiver refers to that state court in Bexar County, Texas as the "Ferrum Receivership Court." The Receiver makes regular reports to the Ferrum Receivership Court on the assets, affairs, and claim by and against Ferrum. Receiver Decl., Ex. 1, ¶ 2. The Receiver's claims against the Ferrum insiders remain pending in the Ferrum Receivership Court.

[5] For evidence of this Ferrum through the Receiver asks the Court to take judicial notice of the claims in the Claims Register in the CAG bankruptcy.

[6] The Receiver's Second Amended Complaint and summons were served on Metropolitan on March 27, 2026. Return of Service of Summons with Receiver's Second Amended Complaint, Ex. 12.

Bankruptcy Court granted that motion.  Trustee's Motion to Substitute and Order Granting, Ex. 10 & 11.

The Receiver claims that Ferrum had a security interest in the accounts CAG and the Oliphant entities purchased in the name of AIM or one of the other Oliphant entities.  The Trustee claims the accounts are property of the CAG Chapter 7 bankruptcy estate.  Trustee Decl., Ex. 9, ¶ 9; Motion to Substitute, Ex. 10, ¶ 8.

Defendant Oliphant has continued to act as servicing agent for Debtor CAG after CAG commenced its bankruptcy in the Western District of Texas.  On a quarterly basis, Oliphant has accounted to the CAG Chapter 7 Trustee for Oliphant's collections on CAG's accounts, identifying for the Trustee the collections attributable to the Ferrum and Growth liens.  Trustee Decl., Ex. 9, ¶¶ 6-9.

### METROPOLITAN'S CLAIMS

After the Receiver served Metropolitan with the Receiver's Second Amended Complaint on March 27, 2026,[7] on March 31, 2026, Metropolitan served Ferrum with the Metropolitan Complaint removed to this Court.[8]  Metropolitan had filed the Complaint on February 6, 2026, but didn't serve Ferrum for seven weeks, until after Metropolitan had been served in the *Musgrove Adversary*. Removed Action Docket Sheet, ECF No.1-1; Affidavit on Service, ECF No. 1-6.

Metropolitan alleges that in the period from 2022 through 2025 Defendant Oliphant as servicer and agent for CAG paid Ferrum collections on accounts in which Metropolitan had an interest.  Metropolitan Complaint, ECF No.1-3, ¶¶ 29-31.  Metropolitan says Oliphant paid

---

[7] Return of Service of Summons with Receiver's Second Amended Complaint, Ex. 12.
[8] The Receiver was served with Metropolitan's Complaint on March 31, 2026.  Receiver Declaration, Ex. 1, ¶ 15; ECF No. 1-6.

Ferrum. *Id.* But Metropolitan says Oliphant was the servicer—and hence, agent—for Chapter 7 Debtor CAG. *Id*. at 20, 21, 29.

Metropolitan says its rights and interests in CAG accounts and proceeds—which the CAG Trustee says are property of the CAG estate and on which Ferrum and Growth have liens—continue after the period Metropolitan alleges in its Complaint. In a recent letter from counsel for Metropolitan in Texas to counsel for the CAG Chapter 7 Trustee, Metropolitan asserts rights in collections of CAG accounts Oliphant paid to the CAG Chapter 7 Trustee for the fourth quarter of 2025. Trustee Decl., Ex. 9, ¶¶ 12, 15; Metropolitan Bankruptcy Claim Letter, Ex. 13. The Trustee regards the Metropolitan Bankruptcy Claim Letter as a claim against the CAG bankruptcy estate. Trustee Decl., Ex. 9, ¶ 8.

The Bankruptcy Court for the Western District of Texas is already adjudicating these and related issues in the administration of the CAG bankruptcy case and the Musgrove Adversary.

The CAG Trustee believes this action is closely connected to the proceedings in and administration of the CAG bankruptcy. Trustee Decl., Ex. 9, ¶¶15-16

**ARGUMENT**

### 1. Bankruptcy Jurisdiction

This action relates to the CAG bankruptcy case. An "action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Worldcom, Inc.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (quoting *Celotex Corp. v. Edwards*, 514 US 300, 308, n.6 (1995)). Because this action relates to the CAG bankruptcy, this Court has jurisdiction over this action under 28 U.S.C. 1334 and 1452.

6

Taking Metropolitan's allegations as true only for the sake of argument, this action is about payments CAG's agent, Defendant Oliphant, made to Ferrum on behalf of CAG and whether Metropolitan has a lien or right in those payments.  This action relates directly to the claims by the CAG Chapter 7 Trustee against Metropolitan that Metropolitan received payments on accounts owned by CAG and is holding property of the CAG bankruptcy estate.  If Metropolitan is correct, the CAG bankruptcy estate is diminished or payment of claims in the CAG bankruptcy is substantially altered.  If the Trustee and Ferrum through the Receiver are correct, the CAG bankruptcy estate is increased.

## 2.  Core Proceeding Status

This action is more than related to the CAG bankruptcy. It is a core proceeding under 28 U.S.C. §§ 157 (b)(2), (A), (B), (K), and (O).  An action commenced outside a bankruptcy court can nevertheless invoke "arising in" jurisdiction under 28 U.S.C. § 1334 and be a core proceeding. *Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, LP*, 487 B.R. 158, 162 (S.D.N.Y. 2013) ("[c]ommon-law claims closely connected with the administration of [a] bankruptcy can qualify as 'arising in' … even though they may … be brought outside a bankruptcy action").

The CAG Chapter 7 Trustee and the Ferrum Receiver claim Metropolitan has property of the CAG bankruptcy estate—traceable proceeds of accounts which the CAG bankruptcy Trustee owns as property of the CAG bankruptcy estate and in which Ferrum has a security interest. Metropolitan says Oliphant overpaid Ferrum by paying proceeds of accounts on which Metropolitan claims a lien.  But what Oliphant means is that Oliphant did so as agent for its principal, CAG, now a debtor in bankruptcy.  If Metropolitan is correct and Oliphant did pay Ferrum funds belonging to Metropolitan, Oliphant's principal, CAG, owes Ferrum reimbursement. CAG is inextricably woven into the facts and events Metropolitan alleges.

7

Moreover, in its recent Metropolitan Bankruptcy Claim Letter, Metropolitan asserts a claim in the CAG Chapter 7 case. Metropolitan Partners claims rights in cash collateral in the hands of the Trustee. Ex. 13. Metropolitan claims entitlement to estate assets, and a right to payment, which is part of administering the estate, a core proceeding under 28 U.S.C. § 157 (b)(2)(A). *See, e.g., United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n (In re United States Lines, Inc*.), 197 F.3d 631, 637 (2d Cir. 1999) (proceedings can be core by virtue of their nature if they are unique or uniquely affected by the bankruptcy proceeding). Only the Bankruptcy Court in the Western District of Texas can decide if that Letter is an obligation of the CAG bankruptcy estate.

Because the outcome of this action will determine whether disputed proceeds of accounts are property of the CAG bankruptcy estate, and how those proceeds are to be distributed, it directly implicates the administration of the estate, and the "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(2)(B); *see Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 560 & 562 (E.D.N.Y. 2010) (transferring venue of action "intimately related to the administration of the bankruptcy'"; quoting *Winstar Holdings, LLC v. Blackstone Group LP*, 2007 WL 4323003, at *5 (S.D.N.Y. 2007)). If Metropolitan is correct that CAG paid Ferrum or Growth $10,000,000 with proceeds of accounts on which Metropolitan has a senior lien, the distribution to creditors in the CAG bankruptcy will be substantially altered. On the other hand, if the Trustee is correct and Metropolitan owes the CAG bankruptcy estate money, again, the distribution to creditors will be altered.

The Trustee's claims in the *Musgrove Adversary*, Metropolitan's claims in this action, and Metropolitan's claim against the CAG bankruptcy estate are competing claims among the Trustee, the Receiver for Ferrum, and Metropolitan Partners to the same proceeds of accounts. In other

8

words, the parties seek "determinations of the validity, extent, or priority" of their respective liens or rights in the property the CAG Trustee claims for the bankruptcy estate. 28 U.S.C. § 157(b)(2)(K).

Resolution of this dispute will determine whether the proceeds are property of the estate and, if so, the priority of the parties' respective interests in these and other proceeds. Adjudicating claims that have the effect of bringing property into the CAG bankruptcy estate is a core function of and proceeding in the Bankruptcy Court in the Western District of Texas. *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) ("proceedings having the effect of bringing property into the estate … are core …").

Because the Bankruptcy Court in the Western District of Texas has exclusive jurisdiction over the property of the CAG bankruptcy estate and is responsible for administering the estate, this Court should use the standard the courts in the courts in the Western District of Texas use in considering what is property of the CAG bankruptcy estate. Property that is arguably property of the CAG bankruptcy estate *is* property of the estate. *Brown v. Chestnut (In re Chestnut),* 422 F.3d 298, 303 (5th Cir. 2005) (recognizing "arguable property" as property of estate for bankruptcy law). Deciding what is arguably property of the estate is a core proceeding. *Endeavour GP LLC v. Endeavor Highrise LP (In re Endeavor Highrise LP)*, 432 B.R. 583, 629-31 (Bankr. S. D. Tex. 2010) (deciding what is arguably property of estate is core proceeding).

Moreover, the Metropolitan Bankruptcy Claim Letter is a claim against the CAG bankruptcy estate. Only the Bankruptcy Court in the Western District of Texas can decide if that Letter is an obligation to be paid from the CAG bankruptcy estate.

9

### 3.  Transfer Under 28 U.S.C. §§ 1412 and 1404

Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Under 28 U.S.C. § 1404, for the convenience of parties and witnesses, the Court may transfer any civil action to any other district where the action might have been filed.

Metropolitan could have filed this action in the Western District of Texas where Ferrum, the Receiver, CAG, and Oliphant are located and where Ferrum through the Receiver, CAG, Oliphant, and Growth are already involved in the CAG bankruptcy.  Ferrum and Growth are secured creditors of CAG in the bankruptcy.  Oliphant is an unsecured creditor, an active participant in the Musgrove Adversary, and served as the servicer on the CAG accounts until the Trustee recently sold CAG's portfolio of accounts.  CAG Amended Schedules, Ex. 5 at 18 of 30; Trustee Decl., Ex. 9, ¶ 5; Metropolitan Bankruptcy Claim Letter, Ex. 13.  The CAG bankruptcy case and the Musgrove Adversary were pending and active when Metropolitan chose to file this case in the New York state court.

In ruling on a motion to transfer under §§ 1412 and 1404, the Court considers these factors: (a) judicial economy and the interests of justice, (b) the location of relevant documents and relative ease of access to sources of proof, (c) the locus of operative facts, (d) the convenience of the witnesses and the availability of process to compel the attendance of witnesses, (e) convenience of the parties, (f) the relative means of the parties, (g) the comparative familiarity of each district with the governing law, and (h) the weight to be given to the plaintiff's choice of forum.  *Lothian Cassidy v. Lothian Exploration*, 487 B.R. at 165-66; *see also Bank of America, N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426-27 (S.D.N.Y.2015) (same).  The Court decides whether to grant a motion for transfer under section 1412 using a preponderance of the evidence standard.

*Schreiber v. Friedman*, 2025 WL 1616659, at *6 (E.D.N.Y. June 8, 2025) ("'preponderance of the evidence'"; quoted and cited authorities omitted).

### 4.  Judicial Economy and Interests of Justice

Of the factors to be considered in deciding transfer, "paramount" are judicial economy and the interests of justice. *Lothian Cassidy LLC v. Ransom*, 428 B.R. at 562 ("paramount among them all"); *see also Bank of America, N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d at 427 (quoting *Lothian Cassidy v. Ransom*).  Transfer of this action to the Western District of Texas "'will ensure supervision by the court most familiar with, and with continuing administrative responsibility for,'" CAG's bankruptcy where the disputed issues in this action are already pending.  *Lothian Cassidy v. Lothian Exploration,* 487 B.R. at 166-67 (quoting *Lothian Cassidy v. Ransom*, 428 B.R. at 562).

The Bankruptcy Court in the Western District of Texas has the pending *Musgrove Adversary* in which it will decide the relative rights among the Chapter 7 Trustee, the Receiver for Ferrum, and Metropolitan in the Trustee's claim that Met received traceable proceeds of Ferrum collateral which the Trustee claims as property of the CAG bankruptcy estate.  And the Bankruptcy Court will decide the relative rights among the Trustee, Ferrum, and Metropolitan in the collections on accounts for which Metropolitan already has asserted its claim in the CAG bankruptcy.[9]

Litigating the claims Metropolitan asserts in this action in this Court risks conflicting rulings between this Court and the Western District of Texas.  Transfer to the Western District of Texas avoids that risk.  *Cf. Delaware Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 520

---

[9] The CAG bankruptcy case has been pending in the Western District of Texas since August 2025.  There are already 335 filings in the CAG bankruptcy case.  There are 144 filings in the *Musgrove Adversary*.  Copies of the Docket Sheets from the CAG bankruptcy and the *Musgrove Adversary* are included with this Motion as Exhibits 15 and 16. The Bankruptcy Court in the Western District of Texas has a substantial learning curve advantage in understanding the relationships among Oliphant, CAG, Metropolitan, and Ferrum over this Court.

11

(S.D.N.Y. 2015) ("[l]itigating related actions in the same tribunal fosters efficient case administration, avoids needless expense, and *avoids risk of conflicted rulings*"; emphasis added).

Because the interests in efficient judicial administration and avoiding inconsistent results are so important, some courts presume that the district where the bankruptcy is located is proper venue for all actions related to bankruptcy cases. *See, e.g., Hohl v. Bastian*, 279 B.R. 165, 177-78 (W.D. Pa. 2002) ("home court presumption provides that the court in which the bankruptcy case itself is pending is the proper venue ..."); *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 267 (M.D.N.C. 2001) (many courts "presume ... proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case").

Because Metropolitan's claims in this action are so interwoven into the circumstances and claims in the CAG bankruptcy and the Musgrove Adversary, the CAG Chapter 7 Trustee supports transfer of this action to the Western District of Texas. Trustee Decl., Ex. 9, ¶ 16.

### 5.  Locus of Operative Events

The locus of operative events is the Western District of Texas. The essence of Metropolitan's claim is that Oliphant, based in Texas,[10] acting as the servicer for CAG, also based in Texas,[11] overpaid CAG's lender, Ferrum, also based in Texas.[12] The bookkeeping and accounting records of Oliphant, CAG, and the Ferrum Receivership are all in the Western District of Texas. Trustee Decl., Ex. 9, ¶ 11; Receiver Decl., Ex 1, ¶¶ 3 & 7; CAG 341 Testimony, Ex. 6 at 7; Oliphant Representative Testimony, Ex. 7 at 9.

---

[10] CAG Amended Bankruptcy Schedules, Ex. 5 at 18 of 30; CAG Representative Testimony, Ex. 8 at. 7-9 & 11-12; Oliphant Representative Testimony, Ex. 7 at 6.
[11] CAG Amended Bankruptcy Schedules, Ex. 5 at 18 of 30; CAG Representative Testimony, Ex. 8 at 7-9 & 11-12; Oliphant Representative Testimony, Ex. 7 at 6.
[12] CAG Amended Bankruptcy Schedules, Ex. 5 at 13.

12

Because Ferrum is in a receivership pending in the Ferrum Receivership Court, if Metropolitan wanted to sue Ferrum outside the *Musgrove Adversary* in Bankruptcy Court in the Western District of Texas, under the *Barton* doctrine, Metropolitan should have done so in the Ferrum Receivership Court. *Barton v. Barbour*, 104 U.S. 126, 128-31 (1881) (dismissing action against receivership filed in court other than the receivership court).

Metropolitan knew at least by the time it had Ferrum served with the Summons and Complaint in this action that Ferrum is in receivership in Texas. The fact of the receivership is disclosed in the Receiver's Second Amended Complaint in the Musgrove Adversary served on Metropolitan before service of Metropolitan's Complaint against Ferrum. Receiver's Second Amended Complaint, Ex. 2, cover page & ¶¶ 1 & 9.

Because the court administering a receivership holds the assets of the entity in receivership *in custodia legis,* claims against the receivership generally must be brought in the receivership court. *Barton*, 104 U.S. at 128-31. Accordingly, Ferrum through the Receiver has filed its Motion to Dismiss Based on the Barton Doctrine.

**6. Location of Witnesses and Documents and Convenience of Parties**

The witnesses for Ferrum (through the Receiver) are in the Western District of Texas. Daniel Laux, who appeared in the CAG bankruptcy as the testifying representative of both Oliphant and CAG, is in Texas. CAG Representative Testimony, Ex. 8 at 7-9 & 11-12. Oliphant Representative Testimony, Ex. 7 at 6. Nick Swinea, the Chief Information Officer of Oliphant and CAG, lives and works in the Western District of Texas. CAG Representative Testimony, Ex. 8 at 54. Swinea created and kept the system Oliphant uses to account for payments received on the CAG portfolio of consumer accounts. Walt Collins Testimony, Ex. 17 at 138 & 225-26. Walt Collins, the founder of CAG is knowledgeable of CAG's relationships with the Oliphant affiliates

13

and with CAG's accounting systems. *Id.* at 22, 49, 51, 68-71, 85, 107, 113-14. Walt Collins is in the Western District of Texas. CAG Representative Testimony, Ex. 8 at 30; Walt Collins Testimony, Ex. 17 at 1. The CAG Chapter 7 Trustee and the Receiver are in the Western District of Texas. Trustee Decl., Ex. 9 ¶¶ 3-4, 11; Receiver Decl., Ex. 1 ¶ 7. The books and records of CAG and Oliphant are kept in Austin, Texas. CAG 341 Testimony, Ex. 6 at 7; Oliphant Representative Testimony, Ex. 7 at 9. The records of the Ferrum Receivership, the Receiver's lawyer and forensic accountant are in the Western District of Texas. Receiver Decl. Ex. 1, ¶ 7-13. The primary constituents of the Ferrum Receivership, 300 or more elderly investors in the Ferrum Ponzi scheme, are in the Western District of Texas. *Id*. at 8 - 10.

As demonstrated by the Receiver's Declaration, the Receiver has a substantial investment in the knowledge his Texas counsel and forensic accountant have in learning and understanding the transactions among Ferrum, CAG, the Oliphant entities, and Metropolitan. *Id.* ¶¶ 7-13. Much of that investment is lost or will require duplication if the Receiver must hire new professionals in New York. *Id*. ¶ 13. The Receiver believes that hiring new professionals in New York would come at substantially higher rates for fees than what the Receiver pays his professionals in Texas. *Id*. Meanwhile, Metropolitan already has counsel in Texas asserting its claim against assets of the CAG bankruptcy estate. Metropolitan Bankruptcy Claim Letter, Ex. 13.

### 7. Metropolitan's Choice of Forum

The Court must consider Metropolitan's choice of forum here in New York. But Metropolitan's venue choice in New York should not overcome the substantial weight favoring transfer to the Western District of Texas. *Cf. Lothian Cassidy v. Ransom*, 428 B.R. at 561-62 (other factors outweighing plaintiff's choice of forum); *Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*, 2020 WL 7042642, at *9 (E.D.N.Y. November 30, 2020) (weight in favor of

plaintiff's choice of forum "overcome … through the Bankruptcy Court's exclusive jurisdiction and familiarity with the relevant facts"; transfer under § 1404); *Bank of America, N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d at 427 (S.D.N.Y. 2013) ("[o]nly the fact that Bank … has chosen this forum argues against transfer, and that choice is clearly outweighed here where the Court has no other connection with the case and the Bankruptcy Court has retained exclusive jurisdiction ….").

In its Complaint in this action, Metropolitan refers to consents by Ferrum, Oliphant, and Growth in an agreement among them to jurisdiction of courts in New York them. Metropolitan Complaint, ECF No.1-3, ¶ 11. But as this Court observed in *Delaware Trust Co. v. Wilmington Trust, N.A.*, such a clause "does not … carry the day, as actions [are] frequently transferred to jurisdictions where bankruptcy proceedings [are] pending …."); 534 B.R. at 521; *see also Lothian Cassidy v. Ransom*, 428 B.R. at 562 ('paramount" consideration was pending "bankruptcy proceeding").

## 8.  Other Neutral Factors

The remaining transfer considerations are neutral.  Metropolitan contends this action involves New York law.  If that is correct, the relevant principles are not novel or inaccessible to the Bankruptcy Court in Texas.  Any advantage a court in New York has over the Bankruptcy Court is slight. And the relative means of the parties is not significant in comparison to the paramount importance of judicial economy and interests of justice.

What matters most is having the one court with exclusive jurisdiction over the assets of the CAG bankruptcy estate and the proceeds at issue in this case subject to competing liens critical for the administration of the CAG bankruptcy estate decide the disputed issues in one forum.

15

## 9. Conclusion on Transfer Factors

The Court should follow the opinions of courts cited above giving most weight to the interests of justice and judicial economy and transfer this action to the Bankruptcy Court in the Western District of Texas.

### CONCLUSION AND REQUEST FOR RELIEF

This action is a core proceeding which should be transferred to the Western District of Texas. This action is about property of the CAG bankruptcy estate in which secured creditors assert competing liens. The outcome of this action could significantly alter the administration of the CAG bankruptcy estate. The interests of justice, judicial economy, and convenience of the parties will be best served by transferring this action to the Western District of Texas. Ferrum (through its Receiver) asks the Court to do so and for all other relief to which it is entitled.

Dated: May 4, 2026

New York, New York

Respectfully submitted,

**LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC**

By: */s/ John W. Moscow*
JOHN W. MOSCOW
10 Grand Central
155 East 44th Street, 25th Floor
New York, New York 10017
Tel: (212) 822-0164
Fax: (212) 826-7146
E-mail: john.moscow@lbkmlaw.com
*Attorney for Defendant Ferrum Capital, LLC*

*Of Counsel:*

ROYAL B. LEA, III
Texas Bar No. 12069680

16

royal@royallealaw.com
ROYAL LEA LAW OFFICE PLLC
1901 NW Military Hwy, Ste. 218
San Antonio, Texas 78213
(210) 202-2395

17

## Certificate of Service

I hereby certify that on May 4, 2026, I have caused a true and correct copy of the above and foregoing to be served on the following by the method indicated below.

*Via E-Mail and U.S. First Class Mail*
Sean C. Sheely
Holland & Knight LLP
787 Seventh Ave., 31st Floor
New York, NY 10019;
sean.sheely@hklaw.com
*Counsel for Plaintiff,*
*Metropolitan Partners Group Administration,*
*LLC*

*Via U.S. First Class Mail*
Oliphant United, Inc.
c/o URS Agents, LLC
3458 Lakeshore Drive
Tallahassee, FL 32312
*Defendant*

*Via U.S. First Class Mail*
Growth Platforms
c/o LegalCorp Solutions LLC
N92W17420 Appleton Ave., Suite 103E
Menomonee Falls, WI, 53051
*Defendant*

*/s/ John W. Moscow*
JOHN W. MOSCOW

18