# EXHIBIT 3

CAUSE NO. 2023-CI-22575

| | | |
|---|---|---|
| JUDY A. MUSGROVE, INDIVIDUALLY, AND AS BENEFICIARY OF THE MAINSTAR TRUST, CUST. FBO JUDY A MUSGROVE IRA #T2181568, AND GOLDSTAR TRUST FBO JUDY A. MUSGROVE IRA, AND KATHLEEN E. PRIEBE, INDIVIDUALLY, AND AS BENEFICIARY OF GOLDSTAR TRUST FBO KATHLEEN E PRIEBE IRA | § § § § § § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § | 438TH JUDICIAL DISTRICT |
| V. | § § | |
| BROOKLYN CHANDLER WILLY, QUEEN B ADVISORS, LLC D/B/A TEXAS FINANCIAL ADVISORY, FERRUM CAPITAL, LLC, MIKE L. COX, JOSHUA L. ALLEN, AND COLLINS ASSET GROUP, LLC | § § § § § § | |
| DEFENDANTS. | § § | BEXAR COUNTY, TEXAS |

## ORDER APPOINTING RECEIVER

**WHEREAS,** Plaintiffs have requested the appointment of a Receiver over Ferrum Capital, LLC and Ferrum IV, LLC (collectively the "Ferrum Entities") and its assets in Plaintiffs' First Amended Petition;

**WHEREAS,** Mr. Joshua L. Allen ("Allen") and Mike L. Cox ("Cox" and together with Allen the "Ferrum Managers"), are the sole managers of the Ferrum Entities;

**WHEREAS,** the Ferrum Entities have agreed to a limited Receivership over certain assets it holds or controls as defined below as the Receivership Assets, but oppose a Receivership over the Ferrum Entities generally;

**WHEREAS,** the Court has subject matter jurisdiction over this action and personal jurisdiction over the Ferrum Entities, Allen, and Cox;

WHEREAS, the Plaintiffs and the Ferrum Entities have agreed to waive any right to compel arbitration in relation to the disputes between them making up the basis of the Plaintiffs' claims in this lawsuit; and

WHEREAS, the Receivership Assets possessed by the Ferrum Entities may be of significant value which should be preserved and maximized for the benefit of all interested parties.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Court has subject matter jurisdiction over the Ferrum Entities. The Ferrum Entities, Allen, and Cox have appeared herein.

2.     The Court finds that: (1) the Receivership Assets are in danger of being lost, removed, or materially injured, (2) circumstances exist that necessitate the appointment of a limited receiver to conserve the Receivership Assets and avoid damage to interested parties, (3) all other requirements of law are complied with, and (4) other available legal and equitable remedies are inadequate.

3.     The Court finds that, based on the pleadings and agreement of the Plaintiffs and the Ferrum Entities, the appointment of a limited receiver over the Receivership Assets is necessary to preserve and maximize the value of the Receivership Assets and avoid damage to interested parties.

4.     The Court hereby takes exclusive jurisdiction and possession of the Receivership Assets, as defined herein, of the Ferrum Entities pursuant to Tex. Bus. & Org. Code §§ 11.402, 11.403, and Tex. Civ. Prac. & Rem. Code § 64.001.

5.     The Court finds that the Plaintiffs and the Ferrum Entities have purposefully availed themselves of the powers and remedies of this Court and have waived any right to compel arbitration in relation to disputes between them which are the basis of the Plaintiffs' claims in this lawsuit.

6.     Until further Order of the Court, Patrick Lowe, of the firm J. Patrick Lowe, P.C. located at 2402 E Main Street, Uvalde, TX 78801, is hereby appointed to serve as the Court's appointed receiver (the "Receiver") over the Receivership Assets owned or controlled by the Ferrum Entities (the "Receivership Estate") pursuant to Texas Bus. Org. Code §11.403, Chapter 64 of the Tex. Civ. Prac. & Rem. Code, and Tex. Bus. & Comm. Code § 24.008(a)(3)(B). Upon appointment, the Receiver will hold the Receivership Assets *in custodia legis*.

## I. Definitions

7.     The following terms shall have the following meaning:

"Receivership Assets" means all assets owned, controlled, leased, possessed, or held, in whole or in part, by or for the Ferrum Entities that obligate Collins Asset Group, LLC, Ryan Project Funding, LLC, or any other maker or obligor of a note or debt instrument to make payment to the Ferrum Entities and pledged as collateral to secure payments to the Plaintiffs, including those rights giving rise to: (a) a lien or encumbrance over the assets of Collins Asset Group, LLC, Ryan Project Funding, LLC, or any other obligor pledging collateral to secure payments to the Plaintiffs, or (b) a claim, cause of action or right of recovery against Collins Asset Group, LLC, Ryan Project Funding, LLC, or any other obligor pledging collateral to secure payments to the Plaintiffs. The Receivership Assets include but are not limited to those assets defined in the attached Exhibit A.

"Ferrum Personnel" means the past and/or present officers, directors, agents, managers, members, trustees, accountants, custodians, and employees of the Ferrum Entities, as well as those acting in their place, at any time since the formation of the Ferrum Entities specifically including but not limited to Joshua L. Allen, Michael L. Cox, and Connie Curry.

## II. Asset Freeze

8.     Except as otherwise specified herein, the Receivership Assets are frozen and may not be conveyed, transferred or in any way hypothecated until further order of the Court other than by the Receiver as detailed herein. Accordingly, all persons, institutions, and entities with direct or indirect control over any Receivership Assets—other than the Receiver or law enforcement officials acting within the course and scope of their official duties—are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or otherwise disposing of or withdrawing such Receivership Assets. This freeze will include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, mutual funds, or other institutions. Pursuant to Texas Business Organizations Code §11.403(c) the Court is taking and shall retain exclusive jurisdiction over the Receivership Assets until such time that the limited receivership is terminated by Court order.

## III.     General Powers and Duties of Receiver

9.     Except as limited herein, the Receiver will have all powers, authorities, rights, and privileges, necessary to manage the Receivership Assets under the supervision of the Court. This includes all powers to manage the Receivership Assets that were heretofore granted to the managers under the limited liability company operating agreements of each of the Ferrum Entities, and all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of Texas law and this Order.

10.     The trustees, directors, officers, managers, investment advisors, accountants, attorneys, and other agents of the Ferrum Entities are hereby ordered not to take any action to

manage, sell, dispose of, retain or in any way exercise control over the Receivership Assets. Such persons and entities will have no authority with respect to the Receivership Assets, except to the extent as hereafter may be expressly granted by the Court or the Receiver.

11.   No person holding or claiming any position of any sort with any of the Ferrum Entities will possess any authority to sell, convey, manage, retain, or in any way exercise control over the Receivership Assets.

12.   Subject to the specific provisions below, the Receiver will have the following general powers and duties:

A.   To use reasonable efforts to determine the nature, location, and value of all Receivership Assets, including but not limited to, those Receivership Assets defined in Exhibit A;

B.   To take custody, control, and possession of all Receivership Assets and records relevant thereto from the Ferrum Entities;

C.   To manage, control, operate, and maintain the Receivership Assets pending further Order of the Court;

D.   To use Receivership Assets for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.   To take any action that, prior to the entry of this Order, could have been taken by the Ferrum Entities with respect to preparing, managing, and marketing the Receivership Assets, in whole or in part, for sale, except as limited by this Order;

F.   To choose, engage and employ attorneys, accountants, appraisers, and any other independent contractors and technical specialists, including, but not limited to, geological surveyors, real estate agents, forensic experts, property managers, and auctioneers (collectively, "Retained Personnel") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order;

G. To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets, including but not limited to controlling and asserting the Ferrum Entities' standing, legal rights, and remedies against other individuals and entities whether such rights existed before or are created by this Order;

H. To the extent necessary to locate and identify assets, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Texas or Federal Rules of Civil Procedure;

I. To bring suit against any liable party for collection or liquidation of a Receivership Asset.

J. To take such other action as may be approved by the Court.

13.    The Receiver may delegate to his agents any of the powers of the Receiver granted to him by this Order.

14.    For the avoidance of doubt, the Receiver's powers and duties are limited to the Receivership Assets and not the Ferrum Entities. The Ferrum Managers shall maintain the rights and powers of managers for the Ferrum Entities, and except as set forth in this Order, the Receiver has no power to manage or control the Ferrum Entities or any of its assets other than the Receivership Assets.

15.    The Receiver may seek further Orders of the Court regarding standing powers of the Receiver, and administration of Receivership Assets as may be deemed necessary to preserve, rehabilitate, and maximize the value of the Receivership Assets, secure the best interests of creditors, investors, and other stakeholders of the Ferrum Entities, and protect the interests of the Receiver.

## IV.    Access to Information

16.    The Ferrum Personnel are hereby enjoined, ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the

Receivership Assets; such information includes but not limited to books, records, documents, accounts, bank statements, financial institution statements, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, details of items deposited, and check registers), investor lists, title documents, leases, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, computer files, databases and other data compilations, including any information stored by third parties or using cloud-based services, access codes, security codes, passwords, safe deposit keys, combinations, and all other instruments, papers, and electronic data or records of any kind or nature, pertaining to the Receivership Assets.

17.    Within ten (10) business days of the entry of this Order, the Ferrum Personnel will file with the Court and serve upon the Receiver a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Assets, including contact information for the party in possession of all Receivership Assets of the Ferrum Entities, held jointly or singly, including without limitation all assets held outside the territory of the United States; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Ferrum Entities related to or in connection with the Receivership Assets; and (c) the amount and nature of all liabilities of the Ferrum Entities related to the Receivership Assets, including without limitation the names, addresses, and amounts of claims of all known creditors of the Ferrum Entities. Such sworn statement will include the names, addresses, telephone numbers, fax numbers, and email addresses of the holders of any legal, equitable, or beneficial interests in such assets and the names, addresses, telephone numbers, fax numbers, and e-mail addresses of any financial institutions or other persons or entities holding such assets, along with the account

numbers and balances. The sworn statements will be accurate as of the date of this Order, will be signed and verified as true and complete under penalty of perjury. The addresses, telephone numbers, fax numbers, and email addresses for the employees of the Ferrum Entities should be redacted in the sworn statement filed with the Court.

18. Within ten (10) business days of the entry of this Order, the Ferrum Personnel will file with the Court and serve upon the Receiver a sworn statement and certification, with complete documentation, covering the period from date of formation of the Ferrum Entities to the present:

A. Of all Receivership Assets, wherever located, held by or in the name of the Ferrum Entities, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control.

B. Identifying every investor in either Ferrum Entity whose investment is secured by, or associated with, the Receivership Assets. Such identification shall include the investor's full name, last known address, contact information, amount of investment, date of investment, and any payments made by the Ferrum Entities towards satisfying the investment, provided that the investor information described above may be redacted from the sworn statement filed with the Court;

C. Identifying every account at every bank, brokerage, or other financial institution: (a) over which the Ferrum Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Ferrum Entities, into which investor funds were deposited and from which Receivership Assets were funded, provided that account numbers should be redacted from the sworn statement filed with the Court;

D. Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Ferrum Entity, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months, provided that account numbers should be redacted from the sworn statement filed with the Court, including where listed on any account statements;

E. That all books and records pertaining to the Receivership Assets have been turned over to the Receiver.

19.    Within ten (10) business days of the entry of this Order, the Ferrum Personnel will provide to the Receiver copies of the Ferrum Entities' federal income tax returns from 2018 through the date of this Order with all relevant and necessary underlying documentation.

20.    The Ferrum Personnel will cooperate with the Receiver in providing information and documents required by the Receiver pertaining to the Receivership Assets, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Ferrum Entities.

21.    The Ferrum Entities and the Ferrum Personnel are required to assist the Receiver in fulfilling his duties and obligations. As such, they must reasonably cooperate with all requests for information and documents from the Receiver regarding the Receivership Assets and administration thereof. This cooperation and assistance will include, but not be limited to: (a) providing any information or documents that the Receiver reasonably deems necessary or appropriate to the exercise of the Receiver's authority and the discharge of the Receiver's responsibilities under this Order; (b) providing any keys, including but not limited to physical, digital, and cryptographic keys, codes, device PINs, and passwords, including but not limited to account, encryption, email account, and computer passwords required to access any computer, electronic file, or telephonic data in any medium related to the Receivership Assets; (c) immediately advising all persons who owe money or currency of any kind to the Ferrum Entities in relation to the Receivership Assets that all debts should be paid directly to the Receiver; (d) providing full access to all Receivership Assets; and (e) maintaining and not wasting, damaging, disposing of, or transferring in any manner any Receivership Assets.

## V.      Access to Books, Records and Accounts

22.     The Receiver is authorized to take immediate possession of all bank accounts or other financial accounts, books, and records and all other documents or instruments relating to the Receivership Assets. All persons and entities having control, custody, or possession of any Receivership Assets, including any financial institutions, are hereby directed to turn such property, including but not limited to all accounts, over to the Receiver.

23.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any Receivership Assets that receive actual notice of this Order will:

  A. Not liquidate, transfer, sell, convey, or otherwise transfer any of the Receivership Assets in the name of or for the benefit of the Ferrum Entities except upon instructions from the Receiver;

  B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of the Court;

  C. Cooperate expeditiously in providing information and transferring Receivership Assets to the Receiver or at the direction of the Receiver.

## VI.      Access to Real and Personal Property

24.     The Receiver is authorized, but not directed, to take immediate possession of the Receivership Assets and information reasonably related to the Receivership Assets, wherever located, including but not limited to documents, files, electronically stored information, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, and contracts.

25.     The Receiver is authorized but not directed to perform a forensic search and make a copy of the contents of any computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, specifically including QuickBooks or other accounting software, in the possession of the Ferrum Entities or Ferrum Personnel.

26.     The Receiver is authorized to review and obtain all mail directed to the Ferrum Entities that is reasonably related to the Receivership Assets and to inspect all mail opened prior to the entry of this Order that is reasonably related to the Receivership Assets, to determine whether items or information therein fall within the mandates of this Order.

27.     The Receiver is authorized to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

## VII.     Notice to Third Parties

28.     The Receiver will promptly give notice of his appointment to all known officers, directors, agents, employees, creditors, debtors, managers, and members of the Ferrum Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

29.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest in any Receivership Asset will, until further ordered by the Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments will have the same force and effect as if the Ferrum Entities had received such payment.

30.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in

the Receivership Assets will, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

31.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the Receivership Assets (the "Receiver's Mail"), including mail addressed to, or for the benefit of, the Ferrum Entities. The Postmaster will not comply with, and will immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Ferrum Entities will not open any of the Receiver's Mail and will immediately turn over such mail, regardless of when received, to the Receiver. The foregoing instructions will apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Ferrum Entities. No one other than Receiver will open a new mailbox regarding the Ferrum Entities, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

## VIII.     Injunction Against Interference with Receiver

32.     The Ferrum Entities, the Ferrum Personnel and all persons receiving notice of this Order are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.  Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B.  Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

C.  Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership Assets or the Ferrum Entities, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Ferrum Entities or which otherwise affects any Receivership Assets; or,

D.  Transferring any Receivership Assets to anyone other than the Receiver;

E.  Destroy, secret, deface, transfer, or otherwise alter or dispose of any documents of or pertaining to the Receivership Assets and to the extent any such documents are no longer in existence, fail to disclose the nature and contents of such documents and how, when, and by whom such documents were caused to no longer be in existence;

F.  Fail to notify the Receiver of any Receivership Assets, including accounts constituting Receivership Assets held in any name other than the name of the Ferrum Entities, or by any person other than the Ferrum Entities, or fail to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Receivership Assets;

G.  Refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their powers, duties, or authority under any order of the Court; and

H.  Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

33.  The Ferrum Entities will cooperate with and assist the Receiver in the performance of his duties.

## IX.  Managing Assets

34.  The Receiver will establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

35.    The Receiver's deposit account will be entitled "Receiver's Account, Estate of [Name of Ferrum Entity]" together with the name of the action, or a title to that effect.

36.    Without further Order of the Court, the Receiver may not liquidate or otherwise dispose of Receivership Assets, including real estate, other than in the ordinary course of business, if the fair market value is greater than $50,000.

37.    The Receiver's duties will include, using reasonable efforts, identifying, marshaling, taking custody of, and preserving the value of the Receivership Assets and identifying appropriate dispositions, liquidation, or rehabilitation of the same.

38.    Upon further Order, pursuant to such procedures as may be required by the Court, the Receiver will be authorized to sell, and transfer clear title to, all assets, including real property, in the Receivership Estate.

39.    The Receiver is authorized to take all actions he deems necessary in his sole judgment to manage or maintain the Receivership Estate, including making payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

### IX.    Bonds

40.    This Order Appointing Receiver will become effective after the following events have occurred:

    A.  This Order Granting Receiver is signed; and

    B.  The Plaintiffs have posted a bond or cash deposit in the amount of $500 (Five Hundred Dollars) with the Bexar County District Clerk; and

    C.  The Receiver has taken the oath to faithfully perform all duties of the Receivership; and

D. The Receiver has posted a bond or cash deposit in the amount of $1,000 (One Thousand Dollars) with the Bexar County District Clerk conditioned on faithful discharge of his duties and obedience to the Orders of the Court.

## X.    Liability of Receiver

41.    The Receiver and his Retained Personnel, acting within scope of such agency, are entitled to rely on all outstanding rules of law and Orders of the Court and will not be liable to anyone for their own good-faith compliance with any order, rule, law, judgment, or decree. In no event will the Receiver or Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities as Receiver or Retained Personnel, including compliance with applicable law governing the collection of debt, nor will the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

42.    In the event the Receiver decides to resign, the Receiver will first give written notice to the Court and counsel for the parties herein of its intention, and the resignation will not be effective until a successor is appointed.

43.    The Receiver will not be personally liable for any liabilities that have accrued or will accrue to the Ferrum Entities.

## XI.    Insurance

44.    All persons or entities affiliated with the Ferrum Entities are ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other information. Persons associated with managers of the Ferrum Entities are ordered: (1)

to advise the insurance agent(s) of this Order in writing, and (2) take no action with regard to terminating or modifying existing insurance policies without written approval from the Receiver.

45.    Any insurance broker, agent, carrier, or underwriter is specifically ordered by the Court to cooperate with the Receiver by timely furnishing the following: (1) copies of all insurance policies including any riders, endorsements and applications with respect to policies related to the Receivership Estate, (2) loss history for five consecutive years or for as long as insurance has been in force if less than five years, (3) premium payment history including current status, and (4) any correspondence with insurance agents, brokers and companies related to the Receivership Assets.

46.    Policies relating to the Receivership Assets must be endorsed by the Plaintiffs and Defendants naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

47.    The Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets. The Ferrum Entities and persons acting on their behalf will cooperate with the Receiver with regard to identifying and maintaining existing insurance policies on the Receivership Assets.

<h3 style="text-align:center">XII.    Recommendations and Reports</h3>

48.    Within thirty (30) days after the end of each calendar quarter, the Receiver will file and serve a full report and accounting of the Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those

claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

49.    The Quarterly Status Report will contain the following:

A. A summary of the operations of the Receiver;

B. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report) ;

C. A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

D. A list of all known creditors of the Receivership Assets with their addresses and the amounts of their claims;

E. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

F. Expenses incurred by the Receiver, including his own fees and fees of Retained Personnel, during that quarter.

## XIII.  Fees, Expenses and Accountings

50.    The Receiver need not obtain approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior approval is not required for payments of applicable federal, state, or local taxes.

51.    The Receiver is authorized to solicit and engage Retained Personnel to assist him in carrying out the duties and responsibilities described in this Order.

52.    The Ferrum Managers and Counsel for the Plaintiffs have agreed to each fund up to $12,500.00, for a total of $25,000.00, in order to fund a Forensic Accountant who may be hired by the Receiver. Each party funding this expense shall be entitled to priority in repayment of these funds as court costs pursuant to Tex. Civ. Prac & Rem. Code 64.053(a)(1).

53.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement on a monthly basis from the Receivership Estate without prior approval, but with full quarterly disclosure to the parties and to the Court.

54.    At the close of the Receivership, the Receiver will submit a Final Accounting, which will include a report of all sums paid to the Receiver and Retained Personnel pursuant to this Order.

55.    All such fees and expenses of the Receiver, including all amounts due to the Receiver or Retained Personnel, will be accorded priority to the maximum extent provided by applicable law.

56.    Further, this Order will constitute a subordinate lien upon the Receivership Assets to secure the compensation of Receiver and Retained Personnel in accordance with this Order. Such lien will be properly perfected upon filing of this Order in the Public Records of the applicable county where such property is located, and the county clerk is hereby directed to accept the lien filing despite any county-specific defects found with the lien filing. Further, this Order directs all title companies to acknowledge the validity of such lien and treat it in accordance with Texas state law.

IT IS SO ORDERED, this 5 day of _____ Jan _____, 2024.

_____
PRESIDING JUDGE

Judge Nicole Garza
37th District Court

**AGREED AND APPROVED
AS TO FORM AND SUBSTANCE:**


*/s/ Randall A. Pulman*
Randall A. Pulman
Shari P. Pulman
Marshall Swanson
PULMAN, CAPPUCCIO & PULLEN, LLP
2161 N.W. Military Highway, Suite 400
San Antonio, Texas 78213
rpulman@pulmanlaw.com
spulman@pulmanlaw.com
mswanson@pulmanlaw.com

*Attorneys for Plaintiffs*

**AGREED AND APPROVED AS TO FORM ONLY:**


*/s/ Christopher M. LaVigne*

Christopher M. LaVigne
Christopher S. Dodrill
Samuel G. Davison
Michael M. Besser
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Chris.lavigne@gtlaw.com
dodrillc@gtlaw.com
sam.davison@gtlaw.com

*Attorneys for the Ferrum Entities*
*and Joshua Allen*


*/r/ Ronak Patel*

Donald R. Littlefield
Ronak Patel
BRESSLER, AMERY & ROSS, PC
16475 Dallas Parkway, Suite 555
Addison, Texas 75001

*Attorneys for Mike L. Cox*


*/s/ Mark J. Barrera*

Mark J. Barrera
THE BARRERA FIRM
424 East Nueva
San Antonio, Texas 78205
(210) 224-5811
mark@thebarrerafirm.com

*Attorneys for Brooklyn Chander Willy*
*And Queen B Advisors, LLC*

**COURTESY COPIES SENT TO:**

Eugene Xerxes Martin, IV
Jacob Michael Bach
MARTIN GOLDEN LYONS WATTS MORGAN PLLC
8750 N Central Expy, Suite 1850
Dallas, TX 75231
(214) 346-2630
xmartin@mgl.law
jbach@mgl.law

*Attorneys for Collins Asset Group, LLC*


Thomas DeFranco
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington D.C., 20005
(202) 220-1928
tomdefranco@dwt.com

*Attorneys for Ryan Project Funding, LLC*

## EXHIBIT A

The Receivership Assets include but are not limited to:

- The "Master Loan Agreement" by and between Ferrum Capital, LLC and Collins Asset Group, LLC, entered into on or about November 15, 2017.

- The "Master Security Agreement" by and between Ferrum Capital, LLC and Collins Asset Group, LLC, entered into on or about November 15, 2017.

- The "Special Purpose Funding Joint Venture Agreement" by and between Ferrum IV, LLC and Ryan Project Funding LLC, entered into on or about May 10, 2019.

- The "Special Purpose Funding Joint Venture Agreement" by and between Ferrum IV, LLC and Ryan Project Funding LLC, entered into on or about June 4, 2019.

- Liens or encumbrances over the assets of Collins Asset Group pledging collateral to secure payments to the Plaintiffs, which may include all or a certain percentage of the following UCC & Portfolio Pools as represented by Collins Asset Group, LLC:
  - 17026.2.1
  - 17026.2.2
  - 17027.2.1
  - 17027.2.2
  - 17040.1.1
  - 17041.1.1
  - 17042.1.1
  - 17050.1.1
  - 17054.1.1
  - 17055.1.1
  - 17056.1.1
  - 17056.1.2
  - 17056.1.9
  - 18003.1.1
  - 18003.1.2
  - 18003.1.9
  - 18007.1.5
  - 18007.2.1
  - 18007.2.2
  - 18009.1.5
  - 18009.2.1
  - 18009.2.2
  - 18010.1.1
  - 18010.1.2
  - 18010.1.9
  - 18015.1.1
  - 18015.1.2
  - 18015.1.3

Receivership Order Exhibit A                                             Page 1

- o 18018.1.1
- o 18018.1.2
- o 18018.1.3
- o 18019.1.1
- o 18019.1.2
- o 18019.1.3
- o 18021.1.1
- o 18021.1.2
- o 18021.1.3
- o 18028.1.1
- o 18028.1.3
- o 18028.1.4
- o 18030.1.1
- o 18030.1.3
- o 18030.1.4
- o 18036.1.1
- o 18036.1.2
- o 18036.1.3
- o 18037.1.1
- o 18037.1.2
- o 18037.1.3
- o 18042.1.1
- o 18042.1.2
- o 18042.1.3
- o 18043.1.2
- o 18043.1.3
- o 18043.1.4
- o 18046.1.2
- o 18046.1.3
- o 18046.1.4
- o 18047.1.2
- o 18047.1.3
- o 18047.1.4
- o 18049.1.1
- o 18049.1.2
- o 18049.1.3
- o 18050.1.1
- o 18050.1.2
- o 18050.1.3
- o 18053.1.1
- o 18053.1.2
- o 18053.1.3
- o 18054.1.1
- o 18054.1.2
- o 18054.1.3
- o 18059.1.1

- o  18059.1.2
- o  18059.1.3
- o  18060.1.1
- o  18060.1.2
- o  18060.1.3
- o  18510.1.1
- o  18510.1.2
- o  18512.1.1
- o  18512.1.2
- o  18514.1.2
- o  18514.1.3
- o  19003.1.1
- o  19003.1.2
- o  19004.1.1
- o  19004.1.2
- o  19005.1.1
- o  19005.1.2
- o  19006.1.1
- o  19006.1.2
- o  19007.1.1
- o  19007.1.2
- o  19008.1.1
- o  19008.1.2
- o  19009.1.2
- o  19009.1.3
- o  19010.1.2
- o  19010.1.3
- o  19011.1.2
- o  19011.1.3
- o  19012.1.2
- o  19012.1.3
- o  19013.1.1
- o  19013.1.2
- o  19015.1.1
- o  19015.1.2
- o  19018.1.1
- o  19018.1.2
- o  19020.1.1
- o  19020.1.2
- o  19023.1.1
- o  19023.1.2
- o  20002.1.1
- o  20002.1.2
- o  20005.1.1
- o  20005.1.2
- o  20008.1.4

Receivership Order Exhibit A                                                                    Page 3

- o 20008.1.5
- o 20009.1.1
- o 20009.1.2
- o 20010.1.1
- o 20010.1.2
- o 20011.1.1
- o 20011.1.2
- o 20012.1.4
- o 20012.1.5
- o 20014.1.1
- o 20014.1.2
- o 20015.1.1
- o 20015.1.2
- o 20016.1.4
- o 20016.1.5
- o 20017.1.1
- o 20017.1.2
- o 20018.1.1
- o 20018.1.2
- o 20020.1.4
- o 20020.1.5
- o 20022.1.1
- o 20022.1.2
- o 20023.1.1
- o 20023.1.2
- o 20024.1.4
- o 20024.1.5
- o 20027.1.4
- o 20027.1.5
- o 20028.1.1
- o 20028.1.2
- o 20030.1.4
- o 20030.1.5
- o 20031.1.1
- o 20031.1.2
- o 20033.1.4
- o 20033.1.5
- o 20035.1.1
- o 20035.1.2
- o 20036.1.1
- o 20036.1.2
- o 20037.1.4
- o 20037.1.5
- o 20039.1.4
- o 20039.1.5
- o 20040.1.1

Receivership Order Exhibit A

- o 20040.1.2
- o 21002.1.3
- o 21002.1.4
- o 21003.1.1
- o 21003.1.2
- o 21005.1.3
- o 21005.1.4
- o 21006.1.1
- o 21006.1.2
- o 21007.1.3
- o 21007.1.4
- o 21009.1.1
- o 21009.1.2
- o 21011.1.1
- o 21011.1.2

- Liens or encumbrances over the assets of Ryan Project Funding, LLC pledging collateral to secure payments to the Plaintiffs.

- The Ferrum Entities' claim(s), cause(s) of action, or right of recovery against Collins Asset Group, LLC.

- The Ferrum Entities' claim(s), cause(s) of action, or right of recovery against Ryan Project Funding, LLC.