# EXHIBIT 6

1

**THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 7 |
| COLLINS ASSET GROUP, LLC | Case No. 25-10994 (LSS) |
| Debtor. | |
| *In re* | Chapter 7 |
| HOLLINS HOLDINGS, INC. | Case No. 25-10995 (LSS) |
| Debtor. | Wednesday, July 9, 2025 |

341 Meeting of Creditors

July 9, 2025

APPEARANCES:

For the Debtor:      Richard Michael Beck, Esq.
KLEHR HARRISON HARVEY BRANZBURG LLP
919 Market Street, Suite 1000
Wilmington, DE 19801

2

(APPEARANCES CONTINUED)

For the Chapter 7
Trustee:                    Office of the Chapter 7 Trustee
                            BY:  GEORGE L. MILLER, ESQUIRE
                            1628 John F. Kennedy Boulevard
                            Suite 950
                            Philadelphia, Pennsylvania 19103

                            Jonathan Lipshie, Esquire
                            UNITED STATES DEPARTMENT OF JUSTICE
                            OFFICE OF THE UNITED STATES TRUSTEE
                            J. Caleb Boggs Federal Building
                            844 King Street
                            Suite 2207, Lockbox 35
                            Wilmington, Delaware 19801


Counsel to George L.
Miller, U.S. Trustee:       Evan T. Miller, Esq.
                            SAUL EWING, LLP
                            1201 North Market Street, Suite 2300
                            Wilmington, DE 19801


                            Randall A. Pulman, Esq.
                            Byron L. Leflore, Esq.
                            PULMAN LEFLORE PULLEN & REED LLP
                            2161 NW Military Highway, Suite 400
                            San Antonio, TX  78213

(Proceedings commenced.)

MR. G. MILLER:  Okay.  Next matter for today is Collins Asset Group LLC, Bankruptcy Number 25-10994.  My name is George Miller.  I'm the Chapter 7 trustee.  I'm here to conduct a 341 examination.  And the Debtors represented by counsel.  Could counsel identify himself for the record, please?

MR. BECK:  Richard Beck from Klehr Harrison Harvey Branzburg.  Excuse me.  My mouth is full.

MR. G. MILLER:  It's quite all right.  Can you bring in -- did you bring a representative of the Debtor?

MR. BECK:  Yes.

MR. G. MILLER:  Could you identify the representative and their capacity at the Debtor?

MR. BECK:  Daniel Locks, Manager of the Debtor.

MR. G. MILLER:  Okay.  And Mr. Lipshie, would you like to make a statement?

MR. LIPSHIE:  Thank you, Mr. Miller.  Jonathan Lipshie, Office of the United States Trustee.  I'd like to state that a request for the election of a Chapter 7 trustee has been made.  The Section 341 meeting will be continued as pending the resolution of the motion to transfer venue by Judge Silverstein.  Thank you.

MR. G. MILLER:  Okay.  Now I forgot, Mr. Lipshie. I didn't have you say that statement at the end of the last

4

one.  Do you want me to reopen a record after this so I can have you say that?

MR. LIPSHIE:  Oh, I believe I thought I had done that.

MR. BECK:  He did it in the beginning.  I don't know if you did it at the end.

MR. LIPSHIE:  I think I did right before the break.

MR. G. MILLER:  Okay.

MR. LIPSHIE:  If you want to reopen it just to make sure --

MR. G. MILLER:  That's your call.  I don't think you have to do it twice, but if you think you need it twice.

MR. BECK:  You did say it at the end.

MR. LIPSHIE:  Yeah.  I think I did.  So I'm fine.

MR. G. MILLER:  Okay.

MR. LIPSHIE:  Thank you.

MR. G. MILLER:  Okay.  Okay.  Mr. Laux, do you solemnly swear or affirm to tell the truth, the whole truth, and nothing but the truth under penalty of perjury?

MR. LAUX:  I do.

MR. G. MILLER:  Do you swear or affirm that you are the Debtor's representative party, testifying on behalf of the Debtor today?

MR. LAUX:  I do.

MR. G. MILLER:  And could you state your name for the record, please?

MR. LAUX:  Daniel Laux.

MR. G. MILLER:  And you've provided me with your Texas driver's license, and I've reviewed the Texas driver's license, and it looks like you.

Are there any creditors present?  If so please identify yourself by a hand raise on Zoom.  You'll be able to -- you'll be allowed to question the Debtor at the conclusion of my examination.

DANIEL LAUX

was called as a witness and, after having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. G. MILLER:

Q.   Mr. Laux, you have in your possession all the information and documentation your attorney sent to me, including the petition schedules and statements available for this meeting?

A.   I do.

Q.   Okay.  I like you to go to the petition, and that petition is signed by Mr. Collins; is that correct?

A.   I signed the petition.

Q.   You signed the petition?  Let me just double check that.

answer.

A.    Sorry, (inaudible).

Q.    Okay.  I'm sorry.

A.    I believe they are accurate.  We did have an oversight in terms of licensing.  We provided you, I believe, my attorney provided you, a licensing spreadsheet that we may need to amend this to include (inaudible).

Q.    Okay.  Have you listened to all your creditors?

A.    We would have.

Q.    Are there any changes you want to make to the bankruptcy schedules or statement of financial affairs?

A.    Other than that licensing that I just mentioned, I don't believe so.

Q.    Okay.  Okay.  Where are the Debtor's book -- hard copy of the Debtor's books and records currently located?

A.    It's actually on a server in Austin, Texas.

Q.    So they're on a server.  So that's not the hard copy.  That's just the computer copy, correct?

A.    Yes.  That's correct.  Believe everything is kept digitally.

Q.    And (inaudible) that server, is that all of it?

A.    Yes.  It's all of it.

Q.    And who would be the contact person in the office if I need information off the server?

A.    I don't know.  I can probably --

Conway and Laux and potentially, the other three people in Hollins Holdings, correct?

A.    I guess that would be a fair assessment.  Yes.  Because the -- I have to go back to the Hollins Holdings schedules.  But --

Q.    Well, they speak for themselves.  And that's, you know, we'll just -- so if it's disclosed in Hollins schedules, then under your testimony in the Hollins matter, you would think those schedules are correct.  Am I correct on that assumption?

A.    Yep.  Yes.  That's correct.

Q.    Okay.  So let's go back to the Schedule AB again.  So it has no investments or publicly traded stock, correct?

A.    That's correct.

Q.    Has no inventory.

A.    I'm sorry.  We're on Part 5; is that correct?

Q.    Part 5.  Right.

A.    Yep.  Correct.  No inventory.

Q.    And it doesn't have any animals, correct?

A.    Correct.

Q.    No office and furniture?

A.    Correct.

Q.    Okay.  Where is Collins's office at?

A.    It's headquartered office is in Austin, Texas.

Q.    Now, where -- who's -- if you go into the door,

whose name's on the door of where the offices are?

A.   Oliphant USA.

Q.   Okay.  So it's all located within Oliphant?

A.   It's in the same location.  Yes.

Q.   Right.  And the same people who own Collins and Collins are the owners of Oliphant, correct?

A.   They share ownership, yes.

Q.   Okay.  Has no machinery and equipment, correct?

A.   Correct.

Q.   So it has no computers to maintain its books and records, correct?

A.   Those are owned by Oliphant.

Q.   So Olyphant has everything, and whoever has access to Oliphant has access to all the Debtor's books and records, correct?

A.   Correct.

Q.   Okay.  Okay.  So you have intangibles.  The intangibles is your internet domain, collinsassetgroup.com; correct?

A.   Correct.

Q.   Okay.  So I have received correspondence, people interested in acquiring that, so it's worth more than zero, correct?

A.   Yes.

Q.   You're just saying it's undetermined.  So there is

I don't have that from me.

Q.   Again, same question that I asked with Hollins. Can you advise, again, for the record, what third parties were retained to assist in the compilation of the schedules and statements?

A.   So I believe that's actually listed.  So Oliphant USA, obviously, as we mentioned, earlier, holds the books and records.  And then as I mentioned, Damien Alfala (phonetic) is a contract worker.  I don't recall the name of his company he is employed by, but you know, we utilize him for accounting.

Q.   Okay.  With respect to Schedule AB, and again, apologies, I know some of this has been asked, but I just want to make sure, with respect to the real property questions.  So has Collins or CAG at any time ever owned any sort of real property to your knowledge?

A.   No.  My knowledge, no.  Do you mind referring me to a certain page just so I can follow along easier?

Q.   Sure.  Schedule AB.  Let's see where that starts here.  It begins on PDF Page 9 of 29 of CAG.  And I believe the real property question, I don't have that number right in front of me, but it's one of the parts.  Oh, there it is. Part 9, which is Question 54.

A.   Thank you.  Thank you.

Q.   Okay.  Then on line -- I'm going to say if we jump

has been made.  This Section 341 meeting will be continued pending the resolution of the motions, the motion to transfer venue by Judge Silverstein.  And will the date be the same date?

MR. G. MILLER:  It'll be the same date, but I'm making this one 2:00.  The first one I made 1:00, I'm making this one 2:00 so that I give sufficient time and then if there's a need for a break between the two meetings then there's a -- I don't perceive seeing the first one going more than that.  We're going an hour, but maybe it still would.  But the -- but the Hollins's case is at 1:00 and the Collins case is at 2:00.

MR. LIPSHIE:  Thank you, Mr. Miller.

MR. G. MILLER:  Okay.  And we'll see all, hopefully, we'll see all in the -- we're just -- let me just think.  Yeah.  We'll see you all at the continued hearing date.  And it'll be -- it'll be the same -- it'll be the same contact number to call in and everything.

MR. BECK:  So we're concluded for today?

MR. G. MILLER:  We're concluded.  Well, we're finished for today and continue to the 8th of August.  All right.  Did I say the 8th of August?  The 15th of August.  I said the 8th.  I meant the 15th of August.

Yeah.  It's the one -- it's the -- it's the 15th because I wanted it close to thirty days after the hearing on

the July 17.  So it's all it's August 15th at 2:00.

Does anybody have any questions?  I know that was a little bit confusing at the end, on the continued date, but it's August 15 at 2:00.

And if you want to get a copy of the transcript, you should contact the Office of United States Trustee, Dion Ming (phonetic).  It'll probably be available next week, beginning of next week or probably the beginning of next week.  The tape is File B as in Bravo and tape one for one and two for Hollins Holding Inc.  And tape three and four on File B of the Collins Asset Group.

MR. BECK:  Thank you.

MR. G. MILLER:  Okay?  Have a nice day.

(Proceedings concluded)

CERTIFICATION


        I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.


/s/ Wendy K. Sawyer                    July 12, 2025

Wendy K. Sawyer, CDLT

Certified Court Transcriptionist

For Reliable