UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METROPOLITAN PARTNERS GROUP ADMINISTRATION, LLC,<br><br>Plaintiff,<br><br>-v.-<br><br>OLIPHANT USA, LLC; FERRUM CAPITAL, LLC; and GROWTH PLATFORMS, LLC,<br><br>Defendants. | 26 Civ. 3467 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Metropolitan Partners Group Administration, LLC ("Plaintiff") commenced this action against Defendants Ferrum Capital, LLC ("Ferrum," and together with Plaintiff, the "Moving Parties"), Oliphant USA, LLC ("Oliphant"), and Growth Platforms, LLC ("Growth") on February 6, 2026, by filing a complaint in New York state court. (Dkt. #1-3 ("Compl.")). Ferrum, acting through its court-appointed Receiver, removed the case to this Court pursuant to 28 U.S.C. §§ 1334 and 1452 on April 27, 2026. (Dkt. #1). Now pending before the Court are (i) Ferrum's motion to transfer venue to the United States Bankruptcy Court for the Western District of Texas (Dkt. #7) and (ii) Plaintiff's motion for remand to New York state court (Dkt. #19). For the reasons that follow, the Court grants Plaintiff's motion for remand and denies Ferrum's motion to transfer venue.

## I. Factual Background

In order to resolve these motions, the Court must supply some background — which it sources from Plaintiff's complaint and the Moving Parties' motion papers. To begin, Collins Asset Group, LLC ("CAG") is an entity that was established to acquire, manage, and service pools of consumer charge-off debt. (Compl. ¶ 13). In essence, CAG purchased bundles of outstanding consumer loan obligations like credit card debt and attempted to collect on those obligations. (*See id.*). Oliphant Financial LLC (a distinct entity from Defendant Oliphant) was also established to acquire, manage, and service pools of consumer charge-off debt — just like CAG. (*Id.* ¶ 14). Oliphant Financial LLC and CAG combined in 2017 and created Defendant Oliphant to service the pools of consumer charge-off debt that they owned. (*Id.*). And, to aid in its acquisition of pools of consumer charge-off debt, CAG borrowed funds from various lenders, including Ferrum and Growth. (*Id.* ¶ 15). In exchange for their funds, CAG granted Ferrum and Growth security interests in some of its assets. (*Id.*).

Plaintiff entered the picture in 2019 when it began financing pools of consumer charge-off debt originated by Oliphant, CAG, Ferrum, and Growth. (Compl. ¶ 16). Because proceeds from these pools were commingled among Oliphant, CAG, Ferrum, and Growth, Plaintiff required each entity to enter into lender acknowledgement agreements designed to protect the proceeds related to Plaintiff's collateral. (*Id.* ¶¶ 1, 16). That is, these agreements were designed to keep the funds separate and each entity's rights distinct. (*See id.* ¶¶ 22, 24,

26). Oliphant was responsible in the first instance for managing the flow of money and keeping everything straight. (*Id.* ¶¶ 23, 27-29). But Ferrum and Growth also had independent obligations to ensure the money went where it was supposed to; if Ferrum or Growth received "funds or other property" that belonged to Plaintiff, "they were contractually obligated to promptly transfer such funds to [Plaintiff]." (*Id.* ¶ 32; *see also id.* ¶ 37).

At bottom, the instant case is about the failure of Oliphant, Ferrum, and Growth to live up to their obligations under the lender acknowledgment agreements. Plaintiff alleges that Oliphant made wrongful payments to Ferrum and Growth and that Ferrum and Growth improperly retained those payments. (Compl. ¶¶ 41-43). Plaintiff brings two breach of contract claims under the lender acknowledgment agreements and a related unjust enrichment claim. It seeks at least $10 million in damages. (*Id.* ¶ 43).

However, there is more to the story — and these additional details explain why Ferrum seeks to transfer venue. According to Ferrum's Receiver, "Ferrum was a Ponzi scheme." (Dkt. #8 at 2 ("Ferrum Br."); *see also id.* ("[Because] CAG was unable to pay Ferrum[,] CAG defaulted on its promissory notes to Ferrum, Ferrum stopped paying the retail investors on the Ferrum-to-retail-investor level promissory notes, and the Ponzi scheme collapsed.")). When Ferrum's retail investors discovered the fraud, they sued "CAG, its insiders, and Oliphant" (*id.* at 3) and on January 5, 2024, a state court in Bexar County, Texas (which sits within the geographic boundaries of the Western District of Texas) appointed a Receiver to manage Ferrum's affairs

(Dkt. #9-1 ¶ 2, 9-3). As relevant here, the Bexar County court, in appointing Ferrum's Receiver, froze all of Ferrum's assets "that obligate[d] [CAG]" and empowered the Receiver to manage all of these assets. (Dkt. #9-3 at 3-4). The Receiver then "sued CAG and its Oliphant affiliates in the Texas state court." (*Id.* at 3).

Separately, on June 4, 2025, CAG filed for Chapter 7 Bankruptcy in the District of Delaware, and on July 25, 2025, the Delaware Bankruptcy Court transferred that case to the Western District of Texas. (Ferrum Br. 1, 3 n.3; Dkt. #9-14; Case No. 25-10994-LSS, Dkt. #1, United States Bankruptcy Court for the District of Delaware). As a result, the "Oliphant affiliates of CAG removed the state court litigation to the United States Bankruptcy Court for the Western District of Texas." (Ferrum Br. 3). And in CAG's bankruptcy proceedings, Ferrum, Growth, and Oliphant are all creditors of CAG. (*Id.* at 3-4). Indeed, "[t]he Receiver's proof of claim for Ferrum is the largest claim — both secured and unsecured." (*Id.* at 4).

So, to summarize: *First*, Ferrum entered receivership in Texas state court and then sued CAG and its Oliphant affiliates. *Second*, CAG filed for bankruptcy in the Western District of Texas, and the Oliphant affiliates removed their state court litigation to the federal bankruptcy court. *Third*, Plaintiff sued Ferrum, Growth, and Oliphant in New York state court for breach of contract.

## II. Analysis

The Moving Parties' motions turn on the same central question: whether Ferrum's property that Plaintiff seeks to recover is related to the ongoing bankruptcy proceedings in the Western District of Texas. If the property is related to the bankruptcy proceedings, the Court has jurisdiction under 28 U.S.C. §§ 1334 and 1452 and should transfer the case to United States Bankruptcy Court for the Western District of Texas. If the property is not related to the bankruptcy proceedings, the Court does not have jurisdiction and should remand the case back to New York state court, where it was originally filed. As explained below, the Court concludes that Ferrum's property that Plaintiff seeks to recover is not related to the ongoing bankruptcy proceedings, so it does not have jurisdiction and must remand the case back to New York state court.[1]

"Pursuant to statute, cases filed in state court may be removed to federal court if they are sufficiently related to bankruptcy proceedings." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (citing 28 U.S.C. §§ 1334, 1452). Although "the district courts shall have original but not exclusive jurisdiction of all civil proceedings [i] arising under title 11, or

---

1 Although there appears to be complete diversity of the parties (Compl. ¶¶ 7-10), and the amount in controversy well exceeds $75,000 (*id.* ¶ 42), no party argues that this Court has diversity jurisdiction over this case. The Court declines to exercise such jurisdiction *sua sponte*. *See Infinity Consulting Grp., LLC* v. *Am. Cybersystems, Inc.*, No. 09 Civ. 1744 (JS) (WDW), 2010 WL 2267470, at *3 (E.D.N.Y. May 30, 2010) ("[T]he Court will not find jurisdiction *sua sponte*."); *Behrens* v. *JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206–07 (2d Cir. 2024) ("[W]hile federal courts must ensure that they do not *lack* subject-matter jurisdiction, even if the parties fail to identify any jurisdictional defect, there is no corresponding obligation to *find and exercise* subject-matter jurisdiction on a basis not raised by the parties.").

[ii] arising in or [iii] related to cases under title 11," 28 U.S.C. § 1334(b), the Court is not persuaded by Ferrum's arguments for "arising under" or "arising in" jurisdiction, *see Worldview Ent. Holdings Inc.* v. *Woodrow*, 611 B.R. 10, 17 (S.D.N.Y. 2019) ("[T]he only basis for subject-matter jurisdiction in this case, if it exists at all, would be 'related to' jurisdiction. The state law claims in this case are not brought under a provision of Title 11, and therefore the claims plainly do not 'arise under' Title 11. Moreover, the state law claims exist independent of the bankruptcy proceeding, and therefore do not 'arise in' Title 11." (citations omitted)). Thus, the relevant inquiry is whether Plaintiff's allegations relate to CAG's bankruptcy in the Western District of Texas.

An "action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. at 317 (quoting *Celotex Corp.* v. *Edwards*, 514 US 300, 308, n.6 (1995)). "Related to" jurisdiction exists where an action's outcome "in any way impacts upon the handling and administration of the bankrupt estate." *In re Enron Corp.*, 353 B.R. 51, 57 (Bankr. S.D.N.Y. 2006). "The leading definition of 'related to' jurisdiction is the formulation of the Third Circuit in *Pacor, Inc.* v. *Higgins*, 743 F.2d 984 (3d Cir. 1984), where the Court held that a proceeding is 'related to' a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Tower Automotive, Inc.*, 356 B.R. 598, 600 (Bankr. S.D.N.Y. 2006); *see*

*also SPV Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 341 (2d Cir. 2018) (engaging with the contours of "related to" jurisdiction under *Pacor*).

"It is not sufficient, however, that the putative 'related to' proceeding and a controversy involving the bankruptcy estate have common issues of fact to confer subject matter jurisdiction." *In re Enron Corp.*, 353 B.R. at 60. To come within the scope of "related to" jurisdiction, the litigation must have a "significant connection" with the bankruptcy. *Id.* Further, "despite the breadth of the 'conceivable impact' formulation in *Pacor*, there is nothing in that decision that suggests that a dispute that only indirectly impacts a bankruptcy estate — by affecting the value of one of [the bankruptcy estate's] assets — comes within 'related to' bankruptcy jurisdiction." *In re Tower Automotive, Inc.*, 356 B.R. at 602.

Applying this standard, "courts within the Second Circuit have found that 'related to' jurisdiction exists in several circumstances." *Worldview*, 611 B.R. at 16. "*First*, 'related to' jurisdiction has been found in cases in which the cause of action will directly impact the amount of any distribution payable to creditors, as for example when the bankruptcy trustee or representative sues to recover damages on behalf of the bankruptcy estate." *Id.* (emphasis added). "*Second*, 'related to' jurisdiction has been found in cases in which the court enjoins third-party non-debtor claims that directly affect the *res* of the bankruptcy estate, which can cover cases where the court enjoins a creditor from suing a third party in order to keep in place the debtor's reorganization plan." *Id.* (emphasis added) (internal quotation marks and citation omitted).

"*Third*, jurisdiction has been found in cases in which there is a 'reasonable legal basis' for a claim by a third-party defendant against the debtor for indemnification or contribution." *Id.* (emphasis added).

In the end, the Court concludes that none of the three circumstances is present here and thus that the instant case is not related to CAG's bankruptcy proceeding. The claims at issue are state law claims for breach of contract and unjust enrichment between non-debtor parties. Plaintiff's claims center solely on money that allegedly contractually belongs to it — money that Ferrum, Growth, and Oliphant allegedly held as agents on Plaintiff's behalf. Because the money at issue allegedly is legally property of Plaintiff, CAG (the debtor in the bankruptcy proceeding and non-party to this action) would have no past, current, or future interest or rights in that property. Accordingly, none of the three bases on which Second Circuit courts have found "related to" jurisdiction exist with respect to the claims here: (i) the outcome of the claims in this action will not directly affect the amount of any distribution payable to creditors; (ii) nor will this action affect the bankruptcy *res* because the debtor is not a party to the claims; and (iii) nor have defendants made any allegations that they would have a reasonable legal claim against the debtor for indemnification or contribution relative to these claims.

In other words, Plaintiff's gripe is with Ferrum, Growth, and Oliphant — not CAG. Plaintiff believes Ferrum, Growth, and Oliphant owe it money under the lender acknowledgment agreements. If indeed that is true, and a court were to enter judgment in favor of Plaintiff against those three entities, it is

possible that those entities might not have the funds to pay the judgment. Their money may be tied up in CAG's bankruptcy proceedings, and they may need to obtain the money in bankruptcy court by exercising their rights as creditors. But that step, even if taken with Plaintiff's judgment against them in mind, is unrelated to Plaintiff's suit against them here. Plaintiff's suit is not for the *res* of CAG's bankruptcy estate and should not affect CAG's liquidation. In bankruptcy, CAG will owe Ferrum, Growth, and Oliphant whatever they are entitled to receive under the Bankruptcy Code, and in this breach of contract case, Ferrum, Growth, and Oliphant will owe Plaintiff whatever they will owe Plaintiff pursuant to a separate judgment. While the parties have historical relationships with each other, this breach of contract case is not related to CAG's bankruptcy proceedings.

Accordingly, the Court GRANTS Plaintiff's motion for remand to New York state court and DENIES Ferrum's motion to transfer venue to the United States Bankruptcy Court for the Western District of Texas. The Clerk of Court is directed to terminate all pending motions and remand this case back to New York State Supreme Court, New York County.

SO ORDERED.

Dated: July 24, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge